BOGGS, Circuit Judge.
 

 A bankruptcy court granted King Construction Company’s petition under Chapter 7 of the Bankruptcy Code to force Concrete Pumping Service, Inc. into involuntary bankruptcy. Concrete Pumping appealed to the United States District Court for the Eastern District of Tennessee, arguing that the bankruptcy court erred because King failed to show that it was “generally not paying such debtor’s debts as such debts become due_” 11 U.S.C. § 303(h)(1). The district court found in favor of King. Concrete Pumping now appeals to us, advancing the same argument. We affirm the decision below.
 

 I
 

 King Construction and Concrete Pumping have previously faced each other in court. In June 1989, King won a judgment for $27,331 in state-court litigation. Unfortunately, the judgment remains uncollected. Judy Sykora, the sole owner and President of Concrete Pumping allegedly loaned her company quite a bit of money from 1978 until 1989. She has, however, produced no documentation of these alleged loans. In June 1989, at about the same time King got its judgment against Concrete Pumping, Sykora supposedly entered into a security agreement with Concrete Pumping collateralizing the debts owed her by Concrete Pumping. These debts had heretofore been unsecured. Like the record of the loans themselves, Sykora has, for whatever reason, chosen not to make the security agreement (if it exists at all) a part of the record before us.
 

 Nonetheless, Sykora did file a UCC-1 financing statement to perfect her security interest in the assets of Concrete Pumping, and that document is a part of the record before us. In that statement, she claims a security interest of over $115,000 in almost all of the company’s assets. Before King had the opportunity to collect on its judgment, Concrete Pumping defaulted on its “loan” from Sykora. Consequently, Syko-ra, as the holder of the security interest, exercised her rights. Thus, Concrete
 
 *629
 
 Pumping turned over almost all of its assets to Sykora.
 

 Concrete Pumping is no longer operating, and its assets are few and of uncertain value. Concrete Pumping is, at this time, an empty husk. Sykora, however, has landed on her feet. The assets of Concrete Pumping that she seized have been put to good use. She now operates another company that performs the same service as did Concrete Pumping, and does so using most of the same equipment. Sykora paid off the creditors of Concrete Pumping out of her own pocket — except, that is, for King Construction. There are no remaining creditors other than King.
 

 King has not tried to collect from those assets that remain with Concrete Pumping. Instead, King filed a petition under Chapter 7 of the Bankruptcy Code to force Concrete Pumping into involuntary bankruptcy. King maintains that the transaction between Sykora and Concrete Pumping was an avoidable preference under the Bankruptcy Code. The bankruptcy court did not pass on the merits of the underlying claim. Nor did the court find, as a factual matter, that the transaction between Sykora and Concrete Pumping was fraudulent. The court did, however, grant the petition to place Concrete Pumping in involuntary bankruptcy. On appeal, the district court affirmed the decision of the bankruptcy court, and Concrete Pumping now appeals to this court.
 

 II
 

 11 U.S.C. § 303(h)
 
 [1]
 
 governs the issue of how and when an involuntary bankruptcy case can be commenced. The statute provides that, where the question of whether bankruptcy is appropriate is controverted, the court can authorize involuntary relief if and only if:
 

 (1) the debtor is generally not paying such debtor’s debts as such debts become due unless such debts are the subject of a bona fide dispute; or
 

 (2) within 120 days before the date of the filing of the petition, a custodian, other than a trustee, receiver; or agent appointed or authorized to take charge of less than substantially all of the property of the debtor for purposes of enforcing a lien against such property, was appointed or took possession.
 

 King does not maintain that the second condition applies here. Nor is there any bona fide dispute regarding the debt, since King has already reduced the debt to a judgment. Accordingly, the only issue is whether “the debtor is generally not paying such debtor’s debts as such debts become due....”
 

 Instead of directly analyzing the statute, both sides seem to rely wholly on a body of doctrine that has developed almost entirely in the district and bankruptcy courts. This body of doctrine is, of course, not binding on us, and we can accept or reject it as we believe that the statute dictates.
 

 The bankruptcy (and some district) courts seem to have developed almost a
 
 per se
 
 rule against granting a petition for involuntary bankruptcy where there is only a single creditor.
 
 See, e.g., In re Smith,
 
 123 B.R. 423, 425 (Bankr.M.D.Fla.1990) (“The general rule is that the failure of a debtor to meet the liability of a single creditor does not warrant the granting of an Order for Relief.”);
 
 In re Gold Bond Corp.,
 
 98 B.R. 128, 129 (Bankr.D.R.I.1989) (The burden on the creditor is “particularly difficult where there is only one creditor involved, since the general rule is that ‘if a debtor is not paying a single debt then the case should be dismissed since a creditor cannot prove the debtor is generally not paying “its debts” as they become due.’ ” (citations omitted));
 
 In re Central Hobron Associates,
 
 41 B.R. 444, 448-49 (D.Hawaii, 1984) (“In the absence of exceptional circumstances, a debtor must neglect more than one debt for the nonpayment to be
 
 *630
 
 ‘general’.”).
 
 Accord, In re Morris,
 
 115 B.R. 752, 757 (Bankr.E.D.N.Y.1990);
 
 In the Matter of Goldsmith,
 
 30 B.R. 956 (Bankr.E.D.N.Y.1983);
 
 In re Arker,
 
 6 B.R. 632, 636 (Bankr.E.D.N.Y.1980);
 
 In the Matter of 7H Land & Cattle Co.,
 
 6 B.R. 29 (Bankr.D.Nev.1980). We note that this rule has been applied by courts within the Sixth Circuit, though we have not had occasion to discuss it.
 
 See Paroline v. Doling,
 
 116 B.R. 583 (Bankr.S.D.Ohio 1990);
 
 In re Fales,
 
 73 B.R. 44 (Bankr.S.D.Ohio 1987). We are aware of only one court of appeals decision to discuss this rule, and in that decision the Eighth Circuit simply adopted the bankruptcy court doctrine without discussing the issue in much depth.
 
 In re Nordbrock,
 
 772 F.2d 397 (8th Cir.1985).
 

 The phrase employed by the statutory text, however, is “generally.” The concept of generality is comparative; it has to do not with an absolute number of some kind of event but rather with the number as a proportion of possible outcomes. It is, of course, less likely that one who is failing to pay only one debt will be “generally” failing to pay one’s debts. Most debtors have several debts; failing to pay one out of a fair number will usually not be “generally” failing to pay one’s debts as they come due. However, the Bankruptcy Code specifically allows a single claimholder to initiate involuntary bankruptcy proceedings where there are fewer than twelve claims against a debtor. 11 U.S.C. § 303(b)(2). This provision clearly contemplates the possibility of a single creditor initiating proceedings. Thus, we question whether the
 
 •per se
 
 rule that seems to have been adopted by the bankruptcy courts is rooted in the statutory text.
 

 We do not believe that it is necessary to decide this question at this time, however, in order to decide the case at hand. We write only to say that we think that the question is an open one. Decision of the issue is not necessary here because we would affirm under any possibly applicable approach. Those courts that have developed the “single-creditor rule” have also developed an exception where there is evidence of “fraud, artifice, or scam.”
 
 Smith,
 
 123 B.R. at 426. The facts in this case strongly suggest that Sykora engaged in “fraud, artifice, or scam,” or possibly even all three. Sykora, an insider, had “loaned” her company money, but she failed to keep any records of these loans. At the same time Concrete Pumping lost a judgment to King, it executed a security agreement covering almost all of its assets. Sykora collects on her agreement, and then turns around and opens another business doing the same thing that Concrete Pumping used to do. This is, on its face, a very suspicious sequence of events. Accordingly, even under the doctrine, as it has grown up in the bankruptcy courts, there was no error in granting the petition.
 

 The alternative approach would be to analyze the question of whether a debtor’s failure to pay debts is sufficiently general in the same fashion in the single-creditor case as in the multi-creditor case. Normally, the question of whether the debtor is generally not paying its debts as they become due is a question of fact, and the bankruptcy court’s conclusions are not disturbed unless clearly erroneous.
 
 See In re H.I.J.R. Properties,
 
 115 B.R. 275, 277 (Bankr.D.Colo.1990). In making this factual determination, courts look to “the totality of the circumstances existing when the petition is filed.”
 
 In the Matter of Bishop, Baldwin, Rewald, Dillingham & Wong,
 
 779 F.2d 471, 475 (9th Cir.1985). The bankruptcy court considers the proportion of the debt being paid — both in terms of the proportion of creditors being paid and the proportion of debt, in dollar value, being paid.
 
 See In re Tikijian,
 
 76 B.R. 304, 321 (Bankr.S.D.N.Y.1987). Had the bankruptcy court applied that approach here, we believe, as a matter of law, that it could only have found that Concrete Pumping was not generally paying its debts as they came due. Concrete Pumping was in default on 100% of its outstanding debt to 100% of its creditors. It is impossible to get any more general than that.
 

 Ill
 

 Both sides in this litigation request sanctions. Both parties’ motions for sanctions
 
 *631
 
 are denied. The decision of the district court is AFFIRMED.
 

 [1]
 

 . We note with displeasure that both of the litigants in this case failed to comply with Fed. R.App.P. 28(f), requiring that statutes, rules, or regulations governing the outcome of the dispute must be reproduced and attached to the brief, either in an addendum or in pamphlet form. This failure evinces a certain inattention to the statutory scheme that runs throughout both parties’ briefs and significantly weakens their analysis of the issues presented.