In re David FISCHER, Debtor.

CROWN HEIGHTS JEWISH COMMUNITY COUNCIL, INC., and Chevra Machziket H'Schechuna, Inc., Plaintiffs,

v.

David FISCHER, et al., Defendants.

Nos. 95–CV–4005 (JS), 95–CV–5219 (JS), 96–CV–733 (JS) and 92–CV–3123 (NG).

United States District Court, E.D. New York.

Oct. 10, 1996.

---

Mitchell B. Nisonoff, Law Offices of Israel Weinstock, Belle Harbor, NY, for Petitioning Creditors and Applicants.

Isaac Nutovic, Nutovic & Lichtenberg, New York City, for Alleged Debtor.

Peter A. Joseph, Law Offices of Israel Weinstock, Belle Harbor, NY, for Plaintiffs.

Eli Feit and Stuart A. Blander, Heller, Horowitz & Feit, P.C., New York City, Robert J. Kaplan, New York City, for Defendants.

Saul E. Feder, Regosin, Edwards, Stone & Feder, New York City, for Proposed Intervenors.

## OPINION AND ORDER

SEYBERT, District Judge:

### INTRODUCTION

The cases at bar relate to the same underlying Chapter 7 bankruptcy proceeding in which petitioning creditors Sadov Realty Corp. ["Sadov"], Chaikel Chanin ["Chanin"] and Herman Steinmetz ["Steinmetz"] filed an involuntary petition for bankruptcy, pursuant to 11 U.S.C. § 303(b), against alleged debtor David Fischer ["Fischer"] in the United States Bankruptcy Court for the Eastern District of New York. This proceeding was assigned to the Honorable Marvin A. Holland, United States Bankruptcy Judge. A description of the bankruptcy cases pending before this Court follows:

(1) **The 96–CV–733 Action:** Petitioning creditors Chanin and Steinmetz [together, the "individual petitioning creditors"] and Sadov appeal from a final order of Judge Holland dated January 3, 1996 denying their motion for summary judgment on their involuntary petition for an order for relief and granting Fischer's cross-motion for summary judgment dismissing the involuntary petition.

(2) **The 95–CV–5219 Action:** Alleged debtor Fischer appeals Judge Holland's order dated November 7, 1995 denying his motion to disqualify the Law Offices of Israel Weinstock from representing the petitioning creditors in the involuntary bankruptcy proceeding against Fischer because of a conflict of interest.

(3) **The 95–CV–4005 Action:** Applicants Crown Heights Jewish Community Council, Inc. and Chevra Machziket H'Schechuna, Inc. move for two separate orders. First, they move for an order pursuant to 28 U.S.C. § 157(d) withdrawing the reference to Bankruptcy Judge Holland of their application for an order vacating the automatic stay with respect to a pending civil RICO action entitled *Crown Heights Jewish Community Council, Inc. and Chevra Machziket H'Schechuna, Inc. v. David Fischer et al.,* 92–CV–3123 (NG) [the "Civil RICO Action"].[1] Second, upon the withdrawal of this reference, they then ask the Court to issue an order pursuant to 11 U.S.C. § 362(d) vacating the automatic stay.

The Court held oral argument on each of these bankruptcy actions on May 20, 1996. Upon oral argument, the Court issued an order with respect to the 95–CV–4005 Action denying Fischer's motion to impose sanctions on Mitchell B. Nisonoff, Esq. The Court reserved decision on all other applications in these actions. The Court also noted that

---

**1.** The Civil RICO Action was recently reassigned from this Court to Judge Nina Gershon. In the Civil RICO Action, plaintiffs Crown Heights Jewish Community Council, Inc. [the "Council"] and Chevra Machziket H'Schechuna, Inc. are not-for-profit corporations incorporated under New York law. Each organization is dedicated to promoting the welfare of the residents of the Crown Heights area of Brooklyn, and has established programs in that neighborhood to provide housing to families with low and moderate incomes. The plaintiffs bring this action under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* [RICO], alleging that defendant David Fischer, their former manager, committed a massive fraud upon them. Specifically, the plaintiffs allege that Fischer, who during the period in question was a Rabbi of the Orthodox Jewish Lubavitch sect, fraudulently placed title to real properties donated to the plaintiffs in the names of corporations and partnerships that he controlled. The plaintiffs further allege that Fischer retained the profits earned by these properties and the proceeds they generated when they were sold or mortgaged. The complaint also charges Fischer with using his positions with the plaintiffs to embezzle grant funds awarded to them by government agencies.

In addition to Fischer, the complaint in the Civil RICO Action names as defendants various corporations and partnerships allegedly created and controlled by Fischer to facilitate his fraudulent real estate scheme, and individuals who allegedly aided and abetted Fischer in executing this scheme [the "Stock Defendants"]. Finally, certain individuals, including Mimi and Harold Furst, seek to intervene in this action. The proposed intervenors claim that they are members of the Council, and that the persons now acting as the Council's Board of Directors lack the authority to bring this action, because they were not elected to the Board in accordance with the Council's by-laws.

because the underlying bankruptcy case had been dismissed, no stay was in effect with respect to the Civil RICO Action pending the Court's resolution of the appeals at bar. *See* Order dated May 20, 1996.

In this Opinion and Order, the Court will begin its analysis with the appeal in the 96–CV–733 Action, because the applications in the 95–CV–5219 Action and the 95–CV–4005 Action are nominally moot pending the Court's resolution of the 96–CV–733 appeal. As the Court subsequently will discuss, its order in the 96–CV–733 Action—which reverses the Bankruptcy Court and remands the underlying bankruptcy case for further proceedings—has the effect of reanimating the 95–CV–5219 and 95–CV–4005 Actions. Accordingly, upon addressing the 96–CV–733 Action, the Court will examine the applications pending in the 95–CV–5219 and 95–CV–4005 Actions.

Finally, in the Conclusion of this Opinion, the Court will enter an order in the Civil RICO Action for the purpose of making a referral to the assigned magistrate judge of two motions pending therein.

## FACTUAL BACKGROUND

The 96–CV–733 Action is an appeal from the United States Bankruptcy Court for the Eastern District of New York of an order denying the petitioning creditors' motion for summary judgment for an order for relief, pursuant to 11 U.S.C. § 303(h)(1), and granting the alleged debtor's motion for summary judgment dismissing the involuntary petition in its entirety.

On August 18, 1995, petitioning creditors Chanin, Steinmetz, and Sadov filed an involuntary petition commencing the subject Chapter 7 bankruptcy case against Fischer. As of the date of the involuntary petition, the petitioning creditors' debts consisted of the following two unstayed state-court money judgments against the alleged debtor: (1) a judgment, entered on June 29, 1994, in the amount of $2,155,465.76 in favor of Sadov; and (2) a judgment for costs in the amount of $275, entered on March 13, 1995, which was

jointly held by the individual petitioning creditors (i.e., Chanin and Steinmetz).[2] The petitioning creditors allege that Fischer has more than $50 million in assets, which he maintains in Israel in order to prevent the collection of these debts. While the Bankruptcy Court made no express findings on this issue, Bankruptcy Judge Holland stated on the record that there is no doubt that Fischer is a multi-millionaire. Tr. at 3–4 (Bankr.E.D.N.Y. Nov. 22, 1995).

In his answer, Fischer denied the involuntary petition's allegation that he is generally not paying his debts as they become due. Fischer, however, admitted—not having denied this assertion in his answer—that the three petitioning creditors were eligible and qualifying petitioners pursuant to 11 U.S.C. § 303(b)(1), in that they are three entities, each of which is a holder of a claim against the alleged debtor that is not contingent as to liability or the subject of a bona fide dispute, whose claims aggregate to at least $10,000 more than the value of any lien on property of the alleged debtor securing such claims held by the holders thereof. *See* 11 U.S.C. § 303(b)(1); Fed.R.Civ.P. 8(d) ("Averments in a pleading to which a responsive pleading is required ... are admitted when not denied in the responsive pleading.").

By notice of motion dated September 14, 1995, the petitioning creditors moved before the Bankruptcy Court for an order granting them summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on their involuntary petition for an order for relief. Fischer subsequently cross-moved for summary judgment seeking an order dismissing the involuntary petition on the ground that the petitioning creditors, as a matter of law, were not entitled to an order for relief.

On January 3, 1996, the Bankruptcy Court entered an order denying the petitioning creditors' motion for summary judgment and granting Fischer's cross-motion for summary judgment dismissing the involuntary petition. This order, which was settled by the parties, reflected Judge Holland's oral rulings from the bench on November 22, 1995. As the

---

**2.** The $275 judgment relates to a prior state-court action brought by Fischer against the indi-

vidual petitioning creditors, which was dismissed with costs.

basis for his rulings, Judge Holland determined that: (1) the $275 debt owed to the individual petitioning creditors was *de minimis* and therefore should not be counted for purposes of evaluating the number of debts at issue under 11 U.S.C. § 303(h)(1); (2) the action was "essentially a one creditor proceeding," Tr. at 4 (Bankr.E.D.N.Y. Nov. 22, 1995), and therefore the "almost *per se* rule" adopted by some courts against granting an order for relief where there is a single creditor was applicable; and (3) state-court remedies adequately protected the petitioning creditors' rights, so as to militate against the invocation of an exception to the "almost *per se* rule." In addition, Judge Holland implicitly determined that: (4) Fed.R.Bankr.P. 1017(a), which requires notice and service to all of the debtor's creditors on certain pre-trial applications, does not apply to a motion for summary judgment; and (5) the petitioning creditors, having not filed an affidavit in accordance with Fed.R.Civ.P. 56(f), were not entitled to a continuance for further discovery. As a result of these determinations, Judge Holland concluded that the petitioning creditors, as a matter of law, were not entitled to an order for relief because the alleged debtor could not be regarded as "generally not paying [his] debts as such debts [became] due...." 11 U.S.C. § 303(h)(1). This appeal followed.

## DISCUSSION

### I.  Standard of Review

Rule 8013 of the Federal Rules of Bankruptcy Procedure establishes the standard governing a district court's review of a bankruptcy judge's order. This rule provides:

> On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses.

Fed.R.Bankr.P. 8013. According to this rule, while a bankruptcy judge's factual findings may not be set aside unless clearly errone-

ous, a bankruptcy judge's legal conclusions are reviewed *de novo*. *See In re Dill,* 163 B.R. 221, 224 (E.D.N.Y.1994).

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to involuntary bankruptcy proceedings by Bankruptcy Rules 1018 and 7056, when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). As this Court is reviewing the Bankruptcy Court's disposition of motions for summary judgment, the principles applicable to the determination whether to grant summary judgment, as articulated by the Second Circuit Court of Appeals, properly apply:

> First, summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Second, the burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists. In considering that, third, all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought. Fourth, the moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.... Finally, the trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution.

*Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1223–24 (2d Cir.1994) (internal case citations omitted). In addition, in evaluating the above considerations, a court must

be mindful of whether the purported factual dispute is material, because "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

## II. The "Almost *Per Se* Rule" Against Granting an Order for Relief in Single Creditor Cases

11 U.S.C. § 303(h) governs the determination whether a creditor who has filed an involuntary bankruptcy petition may obtain an order for relief. This statute provides that, where the allegations of the petition are controverted by the alleged debtor, the court can authorize involuntary relief if and only if:

(1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute; or

(2) within 120 days before the date of the filing of the petition, a custodian, other than a trustee, receiver, or agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.

11 U.S.C. § 303(h). The parties do not dispute that the second condition enumerated above is not at issue in this case. Accordingly, the statutory question presented concerns whether "the debtor is generally not paying such debtor's debts as such debts become due...." 11 U.S.C. § 303(h)(1).

In reaching its determination that the petitioning creditors, as a matter of law, were not entitled to an order for relief, the Bankruptcy Court relied upon case law that has engrafted additional requirements onto the statute. While that doctrine, termed by the parties as an "almost *per se* rule" [the "Almost *Per Se* Rule"], has found support in the bankruptcy courts of the Eastern District of New York, its viability has not been addressed by any district court within the Eastern District of New York or by the Second Circuit Court of Appeals. The decisional authorities relied upon by the Bankruptcy

Court therefore are not binding on this Court.

■ Under the Almost *Per Se* Rule, courts are disinclined to grant an order for relief upon an involuntary petition for bankruptcy where there is only a single creditor. The courts that have adopted this rule have implied that a "single creditor proceeding" is incapable of meeting the requirement of "generality" set forth in 11 U.S.C. § 303(h)(1), thereby precluding an order for relief. In addition, as a policy matter, these courts have expressed their opposition to a single creditor's use of a bankruptcy court as a debt-collection technique. *See, e.g., In re Nordbrock*, 772 F.2d 397, 399 (8th Cir.1985) ("This case reflects efforts by a single creditor to use the Bankruptcy Court as a forum for the trial and collection of an isolated disputed claim, a practice condemned in prior decisions."); *In re Smith*, 123 B.R. 423, 425 (Bankr.M.D.Fla.1990) ("The general rule is that the failure of a debtor to meet the liability of a single creditor does not warrant the granting of an Order for Relief."), *aff'd*, 129 B.R. 262 (M.D.Fla.1991); *In re Gold Bond Corp.*, 98 B.R. 128, 129 (Bankr.D.R.I. 1989) (The burden on the creditor is "particularly difficult where there is only one creditor involved, since the general rule is that if a debtor is not paying a single debt then the case should be dismissed since a creditor cannot prove the debtor is generally not paying its debts as they become due."); *Matter of Goldsmith*, 30 B.R. 956, 963 (Bankr. E.D.N.Y.1983) ("I support the hesitancy of courts to find that an alleged debtor is generally not paying its debts ... when there is only one debt, even if it is a large one."); *In re Arker*, 6 B.R. 632, 636 (Bankr.E.D.N.Y. 1980); *Matter of 7H Land & Cattle Co.*, 6 B.R. 29, 31 (Bankr.D.Nev.1980) ("It may be assumed that in the ordinary case there can be no order for relief with no more proof than mere failure to meet liability to a single creditor.").

■ The courts that have adopted the Almost *Per Se* Rule have carved out two limited exceptions to its application. The first exception arises in "an exceptional case" where the sole creditor of the debtor "would otherwise be without an adequate remedy

under State or Federal law (other than bankruptcy law) if denied an order for relief...." *Matter of 7H Land & Cattle Co.*, 6 B.R. at 34. The second exception to this rule applies where there is "a showing of special circumstances amounting to fraud, trick, artifice or scam." *Id.*

In *In re Concrete Pumping Service*, 943 F.2d 627 (6th Cir.1991), the Sixth Circuit Court of Appeals called into question the reasoning underlying the Almost *Per Se* Rule. The Sixth Circuit focused its analysis on the meaning of 11 U.S.C. § 303(h)(1) in light of 11 U.S.C. § 303(b), which sets forth the requirements for initiating an involuntary petition under chapter 7 or 11 of the Bankruptcy Code.[3] As the Sixth Circuit explained:

> [11 U.S.C. § 303(b)(2) ] clearly contemplates the possibility of a single creditor initiating proceedings. Thus, we question whether the *per se* rule that seems to have been adopted by the bankruptcy courts is rooted in the statutory text.

*In re Concrete Pumping Serv.*, 943 F.2d at 630.

As a matter of statutory construction, this Court is required to defer to the language of 11 U.S.C. § 303(h)(1), and the statutory scheme established when this statute is read in conjunction with 11 U.S.C. § 303(b), in construing Congress's intent in employing the phrase "the debtor is generally not paying such debtor's debts as such debts become due...." 11 U.S.C. § 303(h)(1); *see United States v. Ron Pair Enters.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989). Unfortunately, the subject phrase in section 303(h)(1) is not defined in the Bankruptcy Code, and the legislative history fails to provide much insight in view of the absence of a conference committee resolution of the differences between the House of Representa-

tives' version ("generally unable to pay its debts as they mature") and the Senate version ("generally unable to pay its debts as they mature, or if the debtor has failed to pay a major portion of his debts as they become due") of the legislation which emerged as 11 U.S.C. § 303(h)(1). H.R.Rep. No. 595, 95th Cong., 1st Sess. 323 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6279; S.Rep. No. 989, 95th Cong., 2d Sess. 34 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5820; *see In re B.D. Int'l Discount Corp.*, 701 F.2d 1071, 1075–76 (2d Cir.) (noting that the legislative history of 11 U.S.C. § 303(h)(1) "sheds a limited amount of light," and declining to establish a rule for determining when a debtor is generally not paying his or her debts), *cert. denied*, 464 U.S. 830, 104 S.Ct. 108, 78 L.Ed.2d 110 (1983).

In the absence of clear legislative history, many courts in grappling with this issue have looked to the experience of the courts of Canada, which have construed similar provisions in their bankruptcy statutes to determine whether an allegation that an alleged debtor has failed to pay a single creditor warrants an order for relief. *See, e.g., Matter of 7H Land & Cattle Co.*, 6 B.R. at 32–33. Transposing the analysis of the Canadian courts to the setting presented by 11 U.S.C. § 303(h)(1), these courts have concluded that " 'in the ordinary case there can be no order for relief with no more proof than mere failure to meet liability to a single creditor.' " *In re Arker*, 6 B.R. at 636 (quoting *Matter of 7H Land & Cattle Co.*, 6 B.R. at 31); *see In re Nordbrock*, 772 F.2d at 399; *Matter of Goldsmith*, 30 B.R. at 963.

In this Court's view, the Almost *Per Se* Rule is inconsistent with the language of 11 U.S.C. § 303(h)(1). Specifically, a reading of 11 U.S.C. § 303(h)(1) that prevents a single

---

**3.** 11 U.S.C. § 303(b) provides as follows:

> An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—
> (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute, or an indenture trustee representing such a holder, if such claims aggregate at least $10,000 more than

> the value of any lien on property of the debtor securing such claims held by the holders of such claims;
> (2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $10,000 of such claims.
> 11 U.S.C. § 303(b).

creditor from obtaining an order for relief on an involuntary petition cannot be reconciled with 11 U.S.C. § 303(b)(2), which allows a single creditor to initiate an involuntary bankruptcy proceeding provided that there are fewer than twelve creditors. *See* 11 U.S.C. § 303(b)(2). If Congress had intended that a single creditor not be entitled to relief, this result easily could have been written into the statute. For example, in 1984, Congress amended 11 U.S.C. § 303(b)(1) to include the phrase "or the subject of a bona fide dispute" after the word "liability," thereby narrowing the scope of the statute. *See* 11 U.S.C.A. § 303(b)(1) (1993) (notes on legislative history pertaining to the 1984 Amendments). This amendment was enacted in response to judicial uncertainty over what debts should be counted for purposes of initiating an involuntary bankruptcy proceeding under 11 U.S.C. § 303(b). If Congress had intended the Almost *Per Se* Rule to apply to the 11 U.S.C. § 303(h)(1) analysis, such could have been explicated at the same time that Congress amended 11 U.S.C. § 303(b) in 1984, or again when it amended this statute in 1986 and in 1994. *See* 11 U.S.C.A. § 303(b) (1993 & Supp.1996) (notes on legislative history pertaining to the 1986 and 1994 Amendments). This Court is reluctant to impose a rule that Congress had the opportunity to include in the statute, but failed to provide.

The prevailing rule of statutory construction requires the courts to follow the plain language of the statute, unless following such language would produce a result that is clearly at odds with Congress's intent. *See Ron Pair Enters.*, 489 U.S. at 242, 109 S.Ct. at 1031. For the reasons stated above, this Court is of the view that the Almost *Per Se* Rule is inconsistent with the plain language of 11 U.S.C. § 303(h)(1). Accordingly, the Court concludes that the Bankruptcy Court erred in invoking the Almost *Per Se* Rule as the basis to grant the alleged debtor's motion for summary judgment dismissing the involuntary petition.

## III. The Inapplicability of the Almost *Per Se* Rule

Even assuming that the Almost *Per Se* Rule against granting an order for relief were consistent with 11 U.S.C. § 303(h)(1), this Court still would conclude that it is inapplicable to the present appeal because the underlying bankruptcy case involves two separate debts: one for more than $2.1 million, and a second for $275. The alleged debtor asserts that the $275 debt is *de minimis* and therefore should be excluded from the analysis of whether he was generally not paying his debts as they became due. The Bankruptcy Court agreed with the alleged debtor, and did not consider this debt for purposes of determining either the number of debts that were unpaid at the time that the involuntary petition was filed, or the number of creditors that joined in the application for an order for relief.

■ Two distinct issues are presented with respect to this matter: (1) whether *de minimis* claims should be excluded for purposes of determining whether there is a "single creditor proceeding;" and (2) if such is the case, whether a claim of $275 is *de minimis*.

Most of the cases that have excluded small recurring claims from the determination of the number of creditors involved the interpretation of section 59 of the former Bankruptcy Act of 1898 [the "Act"], which was supplanted by the Bankruptcy Reform Act of 1978 [the "Bankruptcy Code"]. Although the language of section 59(e) did not specifically exclude creditors with small recurring claims, the courts found congressional intent for this proposition in section 56(c) of the Act which provided that " '[c]laims of $50 or less shall not be counted in computing the number of creditors voting or present at creditors' meetings, but shall be counted in computing amount.' " *In re Elsa Designs, Ltd.*, 155 B.R. 859, 865 (Bankr.S.D.N.Y.1993) (quoting 11 U.S.C. § 92 (repealed)); *see Denham v. Shellman Grain Elevator, Inc.*, 444 F.2d 1376, 1379 (5th Cir.1971). Because a creditor holding a claim of less than $50 was unable to participate at a creditors' meeting, these courts reasoned that Congress must have intended that such a creditor not be regarded as a petitioning creditor in an involuntary bankruptcy proceeding. *See In re Elsa*, 155 B.R. at 865.

Section 56(c) of the Act has no counterpart under the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure. Thus, for example, the drafters of the Bankruptcy Code repealed Rule 207 of the Federal Rules of Bankruptcy Procedure, "which prohibited a holder of a claim less than $100 from voting at a creditors' meeting." *In re Elsa,* 155 B.R. at 865. Under the broad definition of a claim, as provided in 11 U.S.C. § 101(5):

> "it would stretch judicial interpretation to the breaking point to read into the definition an exception based on the amount of the claim. If a creditor has a claim, and the creditor is not one that would be excluded pursuant to the provisions of § 303(b)(2), then that creditor should be counted in determining the sufficiency of a petition filed under that section."

*In re Elsa,* 155 B.R. at 865 (quoting *In re Hoover,* 32 B.R. 842, 848 (Bankr.W.D.Okla. 1983)).

The Seventh Circuit Court of Appeals similarly has rejected the *de minimis* exception for small claims as inconsistent with the language of 11 U.S.C. § 303(b). *See Matter of Rassi,* 701 F.2d 627, 632 (7th Cir.1983) ("Congress has not specifically authorized exclusion, and in the absence of any indication that Congress intended this exclusion, we have no authority to engraft it onto those that Congress expressly provided. We hold that bona fide small, recurring claims must be included in the § 303(b)(2) count."); *see also In re Okamoto,* 491 F.2d 496, 498 (9th Cir.1974) (Congress having made no distinction between large and small claims under the Act, the court cannot arrogate the power to do so and thereby engraft an additional exception to the Act); *Grigsby–Grunow Co. v. Hieb Radio Supply Co.,* 71 F.2d 113, 114–15 (8th Cir.1934) (construing the Act); *Matter of Skye Marketing Corp.,* 11 B.R. 891, 899 n. 5 (Bankr.E.D.N.Y.1981). This Court regards the above-cited cases to be consistent with the intent of Congress in enacting not only 11 U.S.C. § 303(b), but also 11 U.S.C. § 303(h)(1), in view of the close relationship that exists between these statutes.

Section 303(b) has been heavily legislated since its initial enactment. Subsequent to the enactment of the Bankruptcy Code in 1978, section 303(b) was substantively amended in 1984 to limit the creditors to be counted to those whose debts were not the subject of a bona fide dispute, and again in 1994 to increase from $5,000 to $10,000 the amount of the aggregate debts in excess of liens that is required to file an involuntary petition.[4] *See* 11 U.S.C.A. § 303(b) (1993 & Supp.1996) (legislative history notes pertaining to the 1984 and 1994 Amendments). The rules of statutory construction therefore suggest that the stated exceptions are the only limitations in determining which creditors are to be excluded. Indeed, as the Seventh Circuit has explained:

> [R]egardless of how wise and salutary exclusion of small, recurring claims might be, Congress has not specifically authorized exclusion, and in the absence of any indication that Congress intended this exclusion, we have no authority to engraft it onto those [exclusions] that Congress explicitly provided.

*Matter of Rassi,* 701 F.2d at 632.

In addition, an inquiry as to whether a debt is *de minimis* in a particular situation is wrought with pragmatic concerns, as the courts have articulated no set guidelines for determining *de minimis* status, but instead have proceeded on a case-by-case basis. *See, e.g., Matter of Runyan,* 832 F.2d 58, 60 (5th Cir.1987) (noting exclusion of creditors with claims of less than $25 for purposes of § 303(b)). As Bankruptcy Judge Brozman observed in *In re Elsa Designs, Ltd.,* 155 B.R. 859 (Bankr.S.D.N.Y.1993):

> [W]hat is *de minimis* in one case may not be in another. Involuntary petitions in which the alleged debtor has debts in excess of $100,000,000 are a commonplace in this court. In the context of such a case, a claim as large as $5,000 (if not larger) could be considered *de minimis* whereas in another case such a claim would be sizeable. In the absence of an expression from Congress as to what it considered *de*

---

4. In 1986, Congress made a technical change to § 303(b), substituting the phrase "subject of" for "subject on." *See* 11 U.S.C.A. § 303(b) (1993) (legislative history notes pertaining to the 1986 Amendments).

*minimis,* it would indeed be difficult to pick a number below which a claim would not be counted.

*Id.* at 865. A similar concern would face this Court if an exception for *de minimis* debts were to apply.[5]

The foregoing pragmatic concerns aside, this Court fails to find statutory support for the exclusion of *de minimis* debts for purposes of the 11 U.S.C. § 303(h)(1) analysis. Accordingly, even assuming that the Almost *Per Se* Rule were consistent with 11 U.S.C. § 303(h)(1), this Court nonetheless would regard the Bankruptcy Court to have erred in excluding from its consideration the $275 debt owed to the individual petitioning creditors.

## IV. Application of the "Generally Not Paying Test"

Having concluded that the Bankruptcy Court erred in granting the alleged debtor's motion for summary judgment dismissing the involuntary petition on the basis of the Almost *Per Se* Rule, the Court now turns to examine whether the record, taken as a whole, nonetheless directs the entry of summary judgment dismissing the involuntary petition, and further, whether the Bankruptcy Court should have granted the petitioning creditors' motion for summary judgment for an order for relief. This analysis likewise requires a close examination of the "generally not paying test" prescribed by 11 U.S.C. § 303(h)(1).

In enacting the Bankruptcy Code in 1978, Congress abandoned traditional standards for an involuntary adjudication of bankruptcy, such as a balance sheet insolvency test, and replaced it with the so-called equity insolvency test. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 323 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6279–80; S.Rep. No. 989, 95th Cong., 2d Sess. 34 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5820; *In re B.D. Int'l,* 701 F.2d at 1075. The equity insolvency test was incorporated into the Bankruptcy Code as part of the criteria for determining who was eligible to be a debtor. It has been referred to as " 'insolvency in the ordinary business sense.' " *Matter of Luftek, Inc.,* 6 B.R. 539, 546 (Bankr.E.D.N.Y.1980) (quoting 8 Collier on Bankruptcy §§ 321–324, at 390 (14th ed. 1978)).

■ In the final analysis, the determination whether an alleged debtor is generally not paying his or her debts as they become due is a flexible one which admits "no hard and fast rules," *In re Einhorn,* 59 B.R. 179, 185 (Bankr.E.D.N.Y.1986), and requires a careful balancing of both the number and amount of the unpaid debts, in proportional terms, viewed in the light of the alleged debtor's total financial picture. Courts that have undertaken this analysis have identified the following four factors as guideposts in their inquiry: (1) the number of unpaid claims; (2) the amount of such claims; (3) the materiality of the nonpayments; and (4) the debtor's overall conduct of its financial affairs. *See In re Norris,* 183 B.R. 437, 456 (Bankr.W.D.La.1995); *In re West Side Community Hosp., Inc.,* 112 B.R. 243, 256–57 (Bankr.N.D.Ill.1990); *In re Caucus Distributors, Inc.,* 83 B.R. 921, 931 (Bankr.E.D.Va. 1988); *In re Garland Coal & Mining Co.,* 67 B.R. 514, 521 (Bankr.W.D.Ark.1986); *In re Einhorn,* 59 B.R. at 186; *Matter of Luftek,* 6 B.R. at 546.

In the instant case, the alleged debtor contends that he cannot be regarded as generally not paying his debts because he has only two outstanding debts. Although Fischer ultimately may prevail on this assertion at trial or upon a subsequent motion for summary judgment following additional discovery,[6] the Court holds that the present record does not permit this conclusion to be reached as a matter of law.

There is substantial authority for the proposition that even though an alleged debtor may owe only one debt, or very few debts, an order for relief may be granted where such debt or debts are sufficiently substantial to

---

5. Unlike the majority of debts that have been held by courts to be *de minimis,* the $275 debt at issue is attributable to an unstayed judgment from a judicial proceeding, and is not a "recurring debt."

6. The Court expresses no view concerning these issues.

establish the generality of the alleged debtor's default. Thus, for example, in *In re Concrete Pumping Service*, 943 F.2d 627 (6th Cir.1991), the debtor was generally not paying its debts as they came due within the meaning of 11 U.S.C. § 303(h)(1) where it was in default on 100% of its outstanding debt *to only one creditor. See id.* at 630. Similarly, in other cases, where the creditors were few in number but a large amount was owed to them—not unlike the instant case— an order for relief has been granted. *See In re Garland*, 67 B.R. at 522 (debtor generally not paying its debts as they became due where, although the debtor was paying most of its creditors in number, the total debt which it was not paying exceeded 50% of its outstanding liabilities); *Hill v. Cargill, Inc.*, 8 B.R. 779, 780–81 (D.Minn.1981) (Although the debtor paid its small consumer creditors, the court ordered relief because of the overwhelming total amount of unpaid claims.); *In re Kreidler Import Corp.*, 4 B.R. 256, 260 (Bankr.D.Md.1980) (order for relief entered where single large debt constituted over 97% of the total obligations).

██ Applying these principles to the instant case on appeal, the Court concludes that a reasonable trier of fact could determine that Fischer was generally not paying his debts as they became due. *See* 11 U.S.C. § 303(h)(1); *Gallo*, 22 F.3d at 1223–24. Although there were only two outstanding debts asserted in the involuntary petition, Fischer was in default on each of them, and combined they exceeded $2.1 million. In addition, the record fails to establish that Fischer was paying, in terms of dollar amounts, anywhere close to 50% of his current liabilities. Accordingly, the Bankruptcy Court's grant of summary judgment dismissing the involuntary petition must be reversed.

Finally, in addition to asserting the "generally not paying test" of 11 U.S.C. § 303(h)(1) as a shield, the petitioning creditors invoke it as a sword and claim that the Bankruptcy Court erred in denying their mo-

tion for summary judgment for an order for relief, because no triable issue of fact was presented as to whether the alleged debtor was paying his debts as they became due. As the foregoing analysis demonstrates, however, such determination cannot be made as a matter of law on the present record in view of the incomplete picture that has been provided concerning Fischer's financial affairs. Accordingly, this case must be remanded to the Bankruptcy Court for further appropriate proceedings.[7]

## V. The 95–CV–5219 Action: Fischer's Appeal of Order Denying His Motion to Disqualify the Petitioning Creditors' Counsel

Because this Court is remanding the underlying bankruptcy case on appeal in the 96–CV–733 Action to the Bankruptcy Court, it now must consider Fischer's appeal of the Bankruptcy Court's order dated November 7, 1995 denying his motion to disqualify the petitioning creditors' counsel, the Law Offices of Israel Weinstock [the "Weinstock Firm"], on the basis of a conflict of interest. According to Fischer and his counsel, this conflict of interest arises as a result of the Weinstock Firm's concurrent representation of other clients in lawsuits against Fischer in the state and federal courts as of the date that the involuntary petition was filed. Specifically, Fischer asserts that such conflict of interest inheres in view of the antagonistic position that would ensue among the Weinstock Firm's clients upon the appointment of a Chapter 7 trustee should the petitioning creditors obtain an order for relief on their involuntary petition. This Court has jurisdiction to hear this appeal in light of the termination of the underlying bankruptcy case, as reflected in the Bankruptcy Court's order and judgment dated February 21, 1996. *See Lovellette v. Southern Ry.*, 898 F.2d 1286, 1289 (7th Cir.1990) ("A judgment that becomes final while an appeal is pending can satisfy the finality requirement."); *Sandidge v. Salen Offshore Drilling Co.*, 764 F.2d 252, 255 (5th Cir.1985); *Gillis v. United*

---

7. In view of the Court's rulings herein, the Court does not reach the issues concerning Rule 1017(a) of the Federal Rules of Bankruptcy Procedure and Rule 56(f) of the Federal Rules of Civil Procedure. The Court notes, however, that in view of the remanding of this case, it now would appear appropriate for the petitioning creditors to be allowed additional discovery.

*States Dep't of Health and Human Servs.,* 759 F.2d 565, 569 (6th Cir.1985) (A premature notice of appeal is effective to vest a court with jurisdiction where the remaining elements of the case have been finally disposed of but no new notice of appeal has been filed.); *Presinzano v. Hoffman–La Roche, Inc.,* 726 F.2d 105, 108 (3d Cir.1984); *Pireno v. New York State Chiropractic Ass'n,* 650 F.2d 387, 389–90 n. 4 (2d Cir. 1981), *aff'd sub nom. Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982); *Jetco Elec. Indus. v. Gardiner,* 473 F.2d 1228, 1231 (5th Cir.1973).

■ In denying Fischer's motion to disqualify the Weinstock Firm as counsel for the petitioning creditors on the basis of a conflict of interest with respect to their clients in other judicial proceedings against Fischer, the Bankruptcy Court ruled as follows:

> Now with regard to the motion to disqualify the [L]aw [F]irm of Israel Weinstock, I am not prepared to grant that, absent the other clients of Mr. Weinstock's filing objections. I think the objection to the extent that it's valid belongs to the other creditors, not to the alleged debtor here. I'm going to deny that.

Tr. at 9 (Bankr.E.D.N.Y. Oct. 11, 1995). It appears from the above statement that the Bankruptcy Court denied Fischer's motion for disqualification based on Fischer's lack of standing, although this issue previously had not been asserted by the petitioning creditors. Such basis for denying Fischer's motion, however, is contrary to the controlling principle, embodied in Disciplinary Rule 1–103(A), that both opposing counsel and the court have independent obligations to examine a possible attorney-client conflict.[8] *See* N.Y.Code of Professional Responsibility DR 1–103(A); *Dunton v. County of Suffolk,* 729 F.2d 903, 908 (2d Cir.) ("Where a conflict is serious and disqualification might be warranted, the ... court is under a duty to ensure that the client fully appreciates his

situation."), *amended on other grounds,* 748 F.2d 69 (2d Cir.1984); *In re Taylor,* 567 F.2d 1183, 1191 (2d Cir.1977) ("When a potential or actual conflict of interest situation arises, it is the court's duty to ensure that the attorney's client, so involved, is fully aware of the nature of the conflict and understands the potential threat to the protection of his interests."); *Vegetable Kingdom, Inc. v. Katzen,* 653 F.Supp. 917, 923 (N.D.N.Y.1987) ("When a serious possibility of a potential or actual conflict of interest presents itself, the court must satisfy itself that no conflict exists or at least provide notice to the affected party if one does.... A motion seeking the disqualification of an attorney representing conflicting interests by an unaffected party is an appropriate means by which to bring the alleged conflict to the attention of the court.") (internal citations and quotations omitted); *SMI Indus. Canada Ltd. v. Caelter Indus.,* 586 F.Supp. 808, 815 (N.D.N.Y.1984) ("Disciplinary Rule 1–103(A) specifically provides that a lawyer possessing unprivileged knowledge of a violation shall report such knowledge to an appropriate tribunal. The First, Fourth, and Fifth Circuits have concluded that DR 1–103(A) confers standing on any attorney to challenge a lawyer's representation of a client when he is privy to facts which justify disqualification.") (internal citations and quotations omitted).

■ There are two reasons why a court must satisfy itself that no conflict of interest exists. First, a court is under a continuing obligation to supervise the members of its bar. *See Dunton,* 729 F.2d at 909. Second, a court has a duty "to exercise that degree of control required by the facts and circumstances of each case to assure the litigants of a fair trial." *Id.* (internal citations and quotations omitted). If an attorney is acting against his or her client's best interests because of a conflict that the client has not been informed of, or if so informed cannot be expected to understand, there is a substantial

---

8. Disciplinary Rule 1–103(A) provides as follows:
A lawyer possessing knowledge, (1) not protected as a confidence or secret, of [an ethical violation] ... that raises a substantial question as to another lawyer's honesty, trustworthiness or fitness in other respects as a lawyer shall

report such knowledge to a tribunal or other authority empowered to investigate or act upon such violation.
N.Y.Code of Professional Responsibility DR 1–103(A).

risk that such client will not be adequately represented. *See id.*

Applying these principles to the appeal at bar, the order of the Bankruptcy Court denying Fischer's motion to disqualify the petitioning creditors' counsel must be reversed insofar as it is predicated on a perceived lack of standing for the assertion of this application. Because the disposition of this issue will require that certain factual findings be made, and the underlying bankruptcy case already is being remanded in connection with the appeal at issue in the 96–CV–733 Action, this Court declines to withdraw the reference to the Bankruptcy Court with respect to the merits of this application. Rather, consideration of the merits of Fischer's application to disqualify the petitioning creditors' counsel is remanded to the Bankruptcy Court for further appropriate proceedings.

## VI. The 95–CV–4005 Action: Application for Withdrawal of Reference and Relief from the Automatic Stay for the Civil RICO Action

Finally, applicants Crown Heights Jewish Community Council, Inc. and Chevra Machziket H'Schechuna, Inc. move this Court, pursuant to 28 U.S.C. § 157(d), for an order withdrawing certain aspects of the underlying bankruptcy case from Bankruptcy Judge Holland. Upon such withdrawal, the applicants seek an order, pursuant to 11 U.S.C. § 362(d), granting them relief from the automatic stay imposed by 11 U.S.C. § 362(a)(1) with respect to an action pending before this Court entitled *Crown Heights Jewish Community Council, Inc. and Chevra Machziket H'Schechuna, Inc. v. David Fischer et al.,*

92–CV–3123 (NG) (i.e., the Civil RICO Action). In their reply brief with respect to this application, the applicants clarified their position as seeking withdrawal of the reference of the underlying bankruptcy case solely with respect to their motion for relief from the automatic stay. *See* Applicants' Reply Mem. at 7. The Court observes that although this application at present is nominally moot, the issue presented therein will reappear immediately upon the remand of the underlying bankruptcy case to the Bankruptcy Court. Accordingly, it is appropriate for the Court to address this matter at this time.

### A. Withdrawal of Reference

28 U.S.C. § 157(d) governs the withdrawal of a reference of a matter from a bankruptcy judge. This statute provides as follows:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d). Thus, 28 U.S.C. § 157(d) provides for two types of withdrawals: (1) permissive withdrawals, and (2) mandatory withdrawals.[9] As the Court now turns to discuss, the instant application for relief from the automatic stay is properly the subject of a permissive withdrawal of refer-

---

**9.** In order to meet the requirements for a mandatory withdrawal, the court must determine that resolution of the proceeding requires consideration of both provisions of the Bankruptcy Code and provisions of other federal laws regulating activities affecting interstate commerce. *See* 28 U.S.C. § 157(d). Although the statutory language is broad, § 157(d) is interpreted narrowly "so that it is not utilized as an escape hatch through which most bankruptcy matters could be removed to a district court." *In re Laventhol & Horwath*, 139 B.R. 109, 114–15 (S.D.N.Y.1992) (internal citations and quotations omitted). Therefore, mandatory withdrawal under § 157(d) is reserved for cases where substantial and material consideration of non-Bankruptcy

Code federal statutes is necessary for the resolution of the proceeding. *See In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2d Cir.1990), *cert. denied*, 502 U.S. 808, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991). "It is not enough, however, that the proceeding involve 'the straightforward application of a federal statute to a particular set of facts.'" *In re E & S Facilities, Inc.*, 181 B.R. 369, 372 (S.D.Ind.1995) (quoting *In re Johns-Manville Corp.*, 63 B.R. 600, 603 (S.D.N.Y.1986)), *aff'd*, 96 F.3d 949 (7th Cir.1996). Rather, the claim must raise either (1) complicated issues of first impression requiring significant interpretation of federal law, or (2) substantial and material conflicts between the Bankruptcy Code and non-title 11 laws. *See id.*

ence.[10]

28 U.S.C. § 157(d) gives discretion to the district court to withdraw for cause shown, in whole or in part, any case or proceeding which has been referred to a bankruptcy judge pursuant to the provisions of § 157(a).[11]  *See* 28 U.S.C. § 157(d). The withdrawal may be upon the motion of the district court, or on timely motion of any party, but in either event "cause" must be established. *See id.*

The term "cause" is not defined in § 157(d). The Second Circuit Court of Appeals, however, has articulated a two-prong test for determining whether "cause" exists to warrant a permissive withdrawal: first, a district court should "evaluate whether the claim is core or non-core," and second, "once a district court makes the core/non-core determination, it should weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993), *cert. dismissed,* —— U.S. ——, 114 S.Ct. 1418, 128 L.Ed.2d 88 (1994).

■ Turning to the matter at bar, although a motion to lift the automatic stay is a "core" determination, *see* 28 U.S.C. § 157(b)(2)(G) (defining core proceedings to include motions to terminate, annul, or modify the automatic stay), the totality of the circumstances militates strongly in favor of the withdrawal of this reference so that this Court may decide this motion. Foremost among the salient considerations is that of judicial efficiency, as the Civil RICO Action—which is the subject of the application to lift the automatic stay—has been pending in the Eastern District of New York for more than four years. There has been extensive work done by the magistrate judge, discovery has progressed significantly, and numerous substantive motions already have been decided. Accordingly, the interest of judicial

efficiency warrants that this Court decide the applicants' motion to lift the automatic stay.

#### B.  *Motion to Lift the Automatic Stay*

Having concluded that the Court, in conjunction with the remand of the underlying bankruptcy case, will withdraw the Bankruptcy Judge's reference with respect to the applicants' motion to lift the automatic stay, the Court now turns to consider the merits of this application.

■ Section 362 of the Bankruptcy Code provides that a bankruptcy petition filed under 11 U.S.C. § 303 "operates as a stay, applicable to all entities," of the commencement or continuation of judicial proceedings against the debtor. 11 U.S.C. § 362(a)(1). The statutory mechanism for lifting the stay, other than by termination of the underlying bankruptcy case, is set forth in 11 U.S.C. § 362(d), which provides in pertinent part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under [subsection 362(a) ], such as by terminating, annulling, modifying, or conditioning such stay—(1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

11 U.S.C. § 362(d)(1). Accordingly, section 362(d)(1) requires an initial showing of cause by the movant in order to lift the automatic stay. *See In re Sonnax Indus.*, 907 F.2d 1280, 1285 (2d Cir.1990). Although 11 U.S.C. § 362(d)(1) cites lack of adequate protection as grounds for "cause," the statute's use of the word "including" makes clear that this is not the only grounds for relief from the automatic stay. *See id.* at 1285–86; *In re Laventhol & Horwath*, 139 B.R. 109, 116 (S.D.N.Y.1992).

■ The decision whether to lift the automatic stay is committed to the discretion of the Court. *See In re Sonnax Indus.*, 907

---

**10.** Pursuant to Rule 5011 of the Federal Rules of Bankruptcy Procedure, "[a] motion for withdrawal of a case or proceeding shall be heard by a district judge." Fed.R.Bankr.P. 5011(a).

**11.** Under 28 U.S.C. § 157(a), "[e]ach district court may provide that any or all cases under

title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). The United States District Court for the Eastern District of New York has provided for such reference.

F.2d at 1286. The Second Circuit Court of Appeals has catalogued a number of factors that a court should consider in deciding whether to modify a stay to allow a suit in another proceeding to go forward. These factors include the following:

(1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) [the] impact of the stay on the parties and the balance of harms.

*Id.* The Court regards the following two factors to hold the greatest significance to the application at bar: (1) the interests of judicial economy and the expeditious and economical resolution of litigation; and (2) the proximity of trial in the other proceeding.

■■■ Upon careful consideration of these factors, the Court concludes that the automatic stay should be lifted to allow the Civil RICO Action to proceed unimpeded by further delay upon the remand of the underlying bankruptcy case. In this regard, the Civil RICO Action has been pending in the Eastern District of New York for more than four years, discovery is nearing its completion, and the Court has devoted substantial resources at both the magistrate-judge and district-judge levels to this case in holding hearings, conducting conferences, and deciding numerous motions. The totality of the circumstances therefore weighs heavily in favor of allowing the Civil RICO Action to proceed unencumbered by a reimposition of the automatic stay. Accordingly, the Court hereby orders that the automatic stay be lifted with respect to the Civil RICO Action, with such order to take effect simultaneously to the restoration of the underlying bankruptcy case to the docket of the Bankruptcy Court.

### CONCLUSION

For the foregoing reasons, the Court enters the following orders in the instant related actions:

### 96–CV–733 Action

1. The order of the Bankruptcy Court is REVERSED and the underlying bankruptcy case is REMANDED to the Bankruptcy Court for further proceedings consistent with this Opinion. The Clerk of this Court shall mark this case as closed.

### 95–CV–5219 Action

2. The order of the Bankruptcy Court is REVERSED and consideration of the subject motion for disqualification is REMANDED to the Bankruptcy Court for further proceedings consistent with this Opinion. The Clerk of this Court shall mark this case as closed.

### 95–CV–4005 Action

3. The applicants' motion to withdraw the reference in question is GRANTED.

4. The applicants' motion for an order lifting the automatic stay with respect to the action entitled *Crown Heights Jewish Community Council, Inc. and Chevra Machziket H'Schechuna, Inc. v. David Fischer et al.,* 92–CV–3123 (NG) (i.e., the Civil RICO Action) is GRANTED. Accordingly, the Court hereby ORDERS that the automatic stay be lifted for the limited purpose of allowing the Civil RICO Action to proceed, with this order to take effect simultaneously to the restoration of the underlying bankruptcy case to the docket of the Bankruptcy Court.

5. The Clerk of this Court shall mark this case as closed.

*92–CV–3123 Action (i.e., the
Civil RICO Action)*

6.   The Court hereby refers to Magistrate Judge Steven M. Gold the following motions for his report and recommendation: (A) the Stock Defendants' motion to dismiss the complaint; and (B) the proposed intervenors' motion for intervention.   In connection with this referral, the parties litigating these motions are directed to provide additional courtesy copies of their motion papers and supplemental correspondences to Magistrate Judge Gold by October 28, 1996.   In addition, the parties are advised that the 92–CV–3123 Action has been reassigned to Judge Nina Gershon for all purposes.

SO ORDERED.