**In re PETRO FILL, INC.,
Alleged Debtor.**

**Bankruptcy No. 92–1188–BM.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Aug. 19, 1992.

John M. O'Connell, Jr., O'Connell & Silvis, Greensburg, Pa., for petitioning creditors.

James R. Walsh, Spence, Custer, Saylor, Wolfe & Rose, Johnstown, Pa., for alleged debtor.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Alleged debtor, Petro Fill, Inc., seeks to have an involuntary chapter 7 petition brought against it dismissed and to recover its costs and attorney's fees from petitioning creditors. Petro Fill denies that petitioning creditors have standing to bring the petition and insists that it generally is paying its debts as they become due.

Petitioning creditors maintain that all of the requirements for bringing an involuntary petition have been met.

The involuntary petition will be dismissed for reasons set forth below. However, Petro Fill's request for costs and attorney's fees will be denied.

I

## FACTS

Petro Fill was incorporated under the laws of South Carolina in 1987. It owns a patented process for filling abandoned underground storage tanks with polyurethane

foam which makes it unnecessary to remove the tanks.

Petro Fill is in the business of selling to others licenses for the use of its patented process. On September 22, 1988, Petro Fill granted an exclusive license to McKelvey Oil Company of Johnstown, Pennsylvania. The territory covered by the license included all of Pennsylvania. McKelvey Oil paid a fee of $25,000 for the license and agreed to pay a royalty equal to five percent (5%) of the annual gross income derived from its use of the license. Petro Fill retained the right to terminate the license upon written notice in the event the royalty payment was less than $6,000. Petro Fill and McKelvey Oil also entered into a similar license agreement at or about the same time for a portion of Ohio.

The sole principals and shareholders of McKelvey Oil are William McKelvey and Jeanne McKelvey. They exercise exclusive control and dominion over its affairs.

On January 2, 1989, approximately three (3) months after the above licensing agreement had been entered into, William McKelvey and Michael Dugger executed an agreement whereby Dugger sold forty-nine percent (49%) of the stock of Petro Fill to William McKelvey for the sum of $325,000. Dugger retained the remaining fifty-one percent (51%) of the stock. The agreement further provided that Dugger would be President and CEO of Petro Fill; that McKelvey would be Chairman of the Board of Directors; that they would be co-equals in the management of Petro Fill; and that they would enjoy equal representation on its board of directors.

Petro Fill moved its operations, at McKelvey's insistence, from South Carolina to Johnstown, Pennsylvania, where McKelvey Oil is located, immediately after execution of the stock purchase agreement. Dugger also moved to Johnstown at that time.

All of Petro Fill's operations were conducted in Johnstown for approximately the next nine (9) months. For reasons that are undetermined, relations between Dugger and McKelvey soured during that period. Dugger left Johnstown and returned to South Carolina in late-September or early-October of 1989 and resumed Petro Fill's operations there.

Upon his return to South Carolina, Dugger sold additional licenses for New Jersey, New York, Virginia, Washington, and Connecticut. Petro Fill received royalty payments from all of these licensees except from the licensee for Connecticut, whose license eventually was terminated. Between January 1, 1991 and June 30, 1992, Petro Fill's operation in South Carolina generated a total of $164,500.99 in cash revenues and disbursed a total of $169,629 in payment of its debts.

McKelvey continued to operate Petro Fill in Johnstown after Dugger had departed for South Carolina. It appears, however, that the Johnstown operation transacted little or no business after October of 1989. It has sold no licenses since 1990 and has not demanded royalty payments from its licensees, including McKelvey Oil.

The nature of the relationship between Petro Fill in Johnstown and Petro Fill in South Carolina is shrouded in mystery. Contacts between Dugger and McKelvey since October of 1989 have been minimal and sporadic. McKelvey has never demanded that Dugger pay debts incurred by Petro Fill during his stay in Johnstown.

William McKelvey and Jeanne McKelvey have not been paid any salary by Petro Fill since sometime in 1991. Also, Petro Fill owes approximately $33,000 to Johnstown Bank and Trust Company. The McKelveys guaranteed repayment of the debt and have made interest payments on it. The bank has *not* made a demand for repayment of the loan, has *not* declared a default, and is *not* a petitioning creditor.

McKelvey Oil Company had provided labor, postage, and photocopying services on behalf of Petro Fill for which it has not been paid. Also, Petro Fill utilized equipment belonging to McKelvey Oil with the

purported understanding that Petro Fill would replace it, which it has not done.

Relations between Dugger and McKelvey continued to worsen even after Dugger had returned to South Carolina. Dugger attempted to convene a meeting of Petro Fill's board of directors in South Carolina for the purpose of removing McKelvey as an officer and director of the corporation. A preliminary injunction was issued in state court in Pennsylvania on March 26, 1991 which prohibited Dugger and Petro Fill from convening such a meeting. The meeting was never held.

On March 17, 1992, an involuntary chapter 7 petition was brought against Petro Fill by William McKelvey, Jeanne McKelvey, and McKelvey Oil as petitioning creditors. They allege that they are creditors of Petro Fill and that Petro Fill generally is not paying its debts which are not subject to bona fide dispute as they become due.

Petro Fill answered the involuntary petition on April 9, 1992. It denied that petitioning creditors have standing to bring a petition and denied that it generally is not paying its debts as they become due. According to Petro Fill, petitioning creditors have failed or refused to provide it with information pertaining to the debts of the Johnstown operation. It alleges that all debts pertaining to the South Carolina operation are being paid in a timely manner.

In addition, Petro Fill has brought a "counterclaim" in which it alleges that the involuntary petition is the result of a shareholder dispute concerning control of the corporation and is designed to liquidate it in bankruptcy without having to litigate the dispute in state court. Petro Fill seeks to recover its costs and counsel fees pursuant to 11 U.S.C. Section 303(i).

## II

### ANALYSIS

Involuntary bankruptcy proceedings are governed by 11 U.S.C. § 303, which provides in relevant part as follows:

(b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

(1) by three or more entities each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute, or an indenture trustee representing such a holder, if such claims aggregate at least $5,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims; ....

(h) If the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed. Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if—

(1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute;

....

(i) If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—

(1) Against the petitioners and in favor of the debtor for—

(A) costs; or

(B) a reasonable attorney's fee....

▪ A contested involuntary petition must be carefully scrutinized because such an action is extreme in nature and carries with it serious consequences for the alleged debtor, such as a loss of credit standing, interference with its general business affairs, and public embarrassment. *See In re McDonald Trucking Co., Inc.*, 76 B.R. 513, 516 (Bankr.W.D.Pa.1987).

### A

The Bankruptcy Code nowhere defines the phrase "generally not paying". The report of the Bankruptcy Commission contains the following comment in that regard:

The scope and meaning of generally unable and generally failed are left to the courts. It is not possible to lay down guidelines that will fit all cases.

Report of the Commission on the Bankruptcy Laws of the United States, 1973, Part II at 75, n. 3.

The relevant standard for determining whether or not an alleged debtor generally is paying its debts is not a mechanical one. *See In re All Media Properties, Inc.,* 5 B.R. 126, 143 (Bankr.S.D.Tex.1980), *aff'd,* 646 F.2d 193 (5th Cir.1981). Rather, it is flexible and involves consideration of the totality of the circumstances and requires a balancing of the interests of the alleged debtor against the interests of its creditors. *See Bartmann v. Maverick Tube Corp.,* 853 F.2d 1540, 1546 (10th Cir.1988)

A determination that an alleged debtor generally is not paying its debts as they become due requires a more general showing of their financial condition and debt structure than simply establishing the existence of a few unpaid bills. *See In re Dill,* 731 F.2d 629, 632 (9th Cir.1984).

The extent of a petitioning creditor's interest in this regard depends on whether that creditor can get adequate relief elsewhere. If they can go into state court to satisfy the debt, bankruptcy courts should adamantly refuse to enter an order for relief. *See In re Central Hobron Associates,* 41 B.R. 444, 451 (Bankr.D.Hawaii 1984) (citations omitted). An involuntary petition should be dismissed where petitioning creditors have adequate remedies under state law. *See In re Kass,* 114 B.R. 308, 309 (Bankr.S.D.Fla.1990).

The burden of establishing that Petro Fill generally is not paying its debts as they become due is upon petitioning creditors. *See Bartmann v. Maverick Tube Corp.,* 853 F.2d at 1546.

Consideration of the totality of the circumstances presented in this case compels the conclusion that Petro Fill generally *is* paying its undisputed debts as they become due.

Although the debts that have not been paid by Petro Fill unquestionably are not insignificant, the reason why they have not been paid apparently is directly attributable to a disagreement of unknown etiology between Petro Fill's only shareholders and the resultant deadlock in managing the corporation which ultimately led to bifurcation of its operations in South Carolina and Pennsylvania.

The interest of Petro Fill's general unsecured creditors, excluding petitioning creditors, in all likelihood would *not* be best served by entry of an order for relief. Prepetition debts incurred by Petro Fill in connection with its operations in South Carolina generally have been paid as and when they became due. The only prepetition debts that have not been paid as and when they became due are certain debts which were incurred during the brief period when Petro Fill conducted its entire operation in Johnstown. As has been noted, this case has been brought under chapter 7. Were an order for relief entered, it is doubtful that creditors of Petro Fill's South Carolina operation would receive as much by way of distribution as they did prior to the filing of the involuntary petition.

No weight should be accorded in this case to the interest of petitioning creditors. The debts allegedly owed to petitioning creditors have not been paid because of the acrimonious dispute between Petro Fill's sole shareholders and the resultant deadlock concerning its control and operation.

Petitioning creditors appear to have an adequate remedy at state law which would provide them with relief. They could bring a petition in state court seeking the involuntary dissolution of Petro Fill pursuant to 15 Pa.C.S.A. § 1981 (Purdon's Supp.1992), which provides in pertinent part as follows:

(a) **General Rule.**—Upon application by a shareholder or director of a business

corporation, the court may entertain proceedings for the involuntary winding up and dissolution of the corporation when any of the following is made to appear:

....

(3) the directors are deadlocked in the direction of the management of the business and affairs of the corporation and the shareholders are unable to break the deadlock and that irreparable injury to the corporation is being suffered or is threatened by reason thereof....

William McKelvey would seem to have standing as a shareholder and director of Petro Fill to bring such an action.

Petitioning creditors conceded at the hearing on Petro Fill's motion to dismiss that they indeed could have brought an action in state court that would have accomplished the same result as they seek in this court. However, they elected instead to accomplish their objective by bringing an involuntary bankruptcy petition because they believed that it would be simpler and more cost-effective to do so.

■ As has been noted, an involuntary bankruptcy petition should be dismissed where adequate state law remedies are available to petitioning creditors. *See In re Kass,* 114 B.R. at 319. Accordingly, no weight should be given in this case to the interest of petitioning creditors. Bankruptcy, especially a chapter 7 proceeding, is not to be regarded as a suitable alternative to dissolution of a deadlocked corporation in state court when the latter remedy is readily available.

Finally, it is beyond question that entry of an order for relief would *not* be in the best interest of Petro Fill. The South Carolina operation of Petro Fill remains viable and in general has managed to pay debts incurred since it returned there as and when they became due. It has the potential of becoming a successful business venture. If an order for relief were to be entered, Petro Fill would cease to operate and would be liquidated.

The appropriate interests, when balanced against one another, overwhelmingly compel the conclusion that an order for relief should not be entered and that the involuntary chapter 7 petition should be dismissed. The substantial interest of Petro Fill and of its prepetition creditors other than petitioning creditors in Petro Fill's continued operation free of the constraints of bankruptcy far outweigh the limited, self-serving interest of petitioning creditors in Petro Fill's liquidation in bankruptcy.

### B

Petro Fill seeks to recover costs and attorney's fees incurred in opposing the involuntary petition pursuant to 11 U.S.C. Section 303(i)(1).

Petro Fill offered no evidence pertaining to these matters at the hearing on its motion to dismiss the involuntary petition. As a consequence, no costs or fees will be awarded to it.

An appropriate order shall be entered.

### ORDER OF COURT

AND NOW at Pittsburgh this 19th day of August, 1992, in accordance with the accompanying Memorandum Opinion, it is hereby ORDERED, ADJUDGED and DECREED that the involuntary chapter 7 petition brought by petitioning creditors, William G. McKelvey, Jeanne W. McKelvey, and McKelvey Oil Company, Inc., be and is hereby DISMISSED. No costs or attorney's fees shall be awarded to alleged debtor, Petro Fill, Inc.