**In re Stephen M. HARMSEN, also known as Steve Harmsen, Debtor.**

**The Society of Lloyd's, Appellant,**

v.

**Stephen M. Harmsen, Appellee.**

BAP No. UT–04–042.
Bankruptcy No. 03B–33637.

United States Bankruptcy Appellate Panel for the Tenth Circuit.

Feb. 2, 2005.

Michael N. Zundel, Prince, Yeates & Geldzahler, Salt Lake City, Utah, for Appellant.

Steven A. Wuthrich, Montpelier, Idaho, for Appellee.

Before McFEELEY, Chief Judge, BOHANON, and BROOKS [1], Bankruptcy Judges.

1. Honorable Sidney B. Brooks, United States Bankruptcy Judge, United States Bankruptcy Court for the District of Colorado, sitting by designation.

## OPINION

BROOKS, Bankruptcy Judge.

The creditor, The Society of Lloyd's ("Lloyd's" or "Creditor"), timely appeals the Order of Dismissal and Memorandum Decision ("Order of Dismissal") entered on April 13, 2004, by the United States Bankruptcy Court for the District of Utah. The Order of Dismissal was entered after a trial on the involuntary petition filed by Lloyd's against the putative debtor, Stephen M. Harmsen ("Harmsen"). Lloyd's argues that the Order of Dismissal was entered in error because the bankruptcy court erroneously concluded that the Debtor was generally paying his debts as they became due.

 The Creditor's issues on appeal are not clearly defined or carefully delineated[2] but can be summarized as follows:

(a) The bankruptcy court improperly imposed on the Creditor an expanded burden of proof under the Tenth Circuit's "totality of the circumstances" test in evaluating whether an order for relief should enter in an involuntary bankruptcy case set as set forth in *Bartmann v. Maverick Tube Corp.*[3]

(b) The bankruptcy court either improperly invoked the "Almost *Per Se* Rule" or should have *not* invoked the Rule.[4]

(c) The bankruptcy court erroneously concluded that the putative debtor, Harmsen, was generally paying his debts as they became due.

Underlying this appeal is the Creditor's view that the putative debtor, Harmsen, through a well crafted, self-serving business structure and a carefully timed, insider-controlled business foreclosure on his assets, wrongfully deprived the Creditor of an ability to execute on its judgment against the Debtor.

Lloyd's requests that this Court conclude that Harmsen was generally *not* paying his debts as they became due and remand this matter to the bankruptcy court to determine if Harmsen has twelve or more creditors who qualify to be counted under 11 U.S.C. § 303(b)(2) and if not, direct that the bankruptcy court enter an order for relief.

 The appellee, Harmsen, responds to Lloyd's appeal by arguing that:[5]

(a) Lloyd's allegation that the bankruptcy court did not properly allocate the burden of proof is incorrect and really a disguised effort to alter the "clearly erroneous" appeal standard.

---

**2.** *Compare* Appellant's "Statement of Issues Presented on Appeal and Standard of Review" (Lloyd's Appellate Brief at 1–3) *with* Appellant's "Summary of Argument" (Lloyd's Appellate Brief at 13–14), and· "Argument Point I" sections A–F (Lloyd's Appellate Brief at 14–29).

**3.** 853 F.2d 1540, 1546 (10th Cir.1988).

**4.** The "almost per se rule" is a "rule" under which a minority of .courts are "purportedly disinclined to permit an involuntary petition where there is only a single creditor." *In re Feinberg,* 238 B.R. 781, 784 (8th Cir. BAP 1999), *judgment vacated* (8th Cir. BAP December 16, 1999). The majority of courts that

have considered this issue have rejected this rule on the basis that there are no statutory grounds for not permitting single creditor involuntary petitions. *See, e.g., Concrete Pumping Service, Inc. v. King Constr. Co., Inc. (In re Concrete Pumping Service, Inc.),* 943 F.2d 627 (6th Cir.1991).

**5.** Harmsen posits a third response—or issue on appeal—which is (a) not raised by the Appellant and (b) was not decided by the bankruptcy court. The panel will, therefore, not address Harmsen's arguments that: (a) Lloyd's lacked standing to file the involuntary petition, and (b) Lloyd's debt is subject to a bona fide dispute.

(b) The bankruptcy court did not commit error in considering various factors under the "totality of circumstances" test and its findings of fact were not clearly erroneous.

The parties have consented to this Court's jurisdiction because they have not elected to have the appeal heard by the United States District Court for the District of Utah.[6] For the reasons stated, the bankruptcy court's Order of Dismissal is AFFIRMED.

## I. *Background*

Lloyd's filed an involuntary Chapter 7 petition against Harmsen on August 9, 2003. Lloyd's states that Harmsen owed it $390,983.57 based upon a judgment entered in the United States District Court for the District of Utah. On March 11 and 12, 2004, the bankruptcy court conducted a trial on the involuntary petition and issued its thirty page Memorandum Decision dismissing the petition on April 13, 2004.

Other than the facts involving the nature, amount and status of the various financial obligations of Harmsen, the facts relevant to the case are not materially disputed.

### A. Harmsen's Businesses

Harmsen manages several businesses owned by himself and his family. The finances and transactions by and among Harmsen, his family, and his related businesses are complex and convoluted. At times, Harmsen is a financial accommodator to his family businesses. At other times, the businesses are the accommodator to Harmsen. At all times, a clear and crisp delineation between Harmsen and his businesses does not emerge. Moreover, the debt owed by Harmsen to Lloyd's is not a routine obligation. Understanding

this case and the dispute between the parties requires a description of the relationships, and the financial arrangements and transactions between and among Harmsen, his businesses, and his family.

The businesses of Harmsen and his family include, among others: S.R.C. Corporation, d/b/a Steve Regan Co. ("SRC"); West American Finance Corporation ("WAFCO"); Mud Creek Hydro Corporation; HH Land and Title Company; H.K. Hydro Inc.; and H.F.L.P., L.C. Of these various businesses, SRC and WAFCO are those businesses where Harmsen focuses his involvement. SRC and WAFCO each have an estimated value of $1 million to $1.5 million.

SRC compensates Harmsen, its manager, in the sum of $36,000.00 per annum plus a bonus, in the range of $125,000.000 to $150,000.00 per annum, if the company is profitable. SRC uses several of Harmsen's credit cards to purchase items needed by the business. Harmsen also uses those credit cards for personal and family expenses and purchases. At the end of the year, a reconciliation is made offsetting the commingled personal charges made on the credit cards by Harmsen against the remaining compensation that may be due to him.

WAFCO pays Harmsen, its manager, the sum of $75.00 per hour for services rendered. He is also compensated in the form of payment of all unreimbursed medical, insurance, and dental expenses of himself and his family. Until June of 2003, WAFCO was owned (1) 50% by H.F.L.P., L.C. and (2) 50% by Harmsen's brother, Randall Harmsen, who has been identified as the president of the company since 1995. H.F.L.P., L.C. is owned by Harmsen's children who have a 70% ownership interest and Harmsen's wife who has a

---

6. 28 U.S.C. § 158(b)-(c); Fed. R. Bankr.P. 8001(e).

30% ownership interest. In June of 2003, all interests of Harmsen and his wife in these entities was terminated by foreclosure pursuant to a 1996 judgment WAFCO holds against Harmsen and his wife in the original amount of $2,215,907.11, plus interest.

While Harmsen's brother, Randall Harmsen, was the named president of WAFCO since 1995, the testimony at trial revealed that Randall Harmsen's role in the management of WAFCO was, at best, minimal, and, arguably, non-existent, and his knowledge of the company was very general.[7] Instead, the decision-maker for the company was Harmsen, who had run the company on a day-to-day basis since 1991.[8]

Again, as with SRC, Harmsen's personal credit cards have been used by WAFCO and business and personal charges were commingled. As of August 9, 2003, approximately $30,000 had been earned by Harmsen and remained unpaid by WAFCO.

## B. Harmsen's Debts

### 1. Obligation to Lloyd's

Prior to the filing of the involuntary petition, Harmsen participated in certain insurance commitments by assuming a portion of a syndicate's risks in the English insurance market regulated by Lloyd's. In November of 1996, Lloyd's sued Harmsen in England and a judgment was subsequently entered against Harmsen in favor of Lloyd's on March 11, 1998 in the sum of £208,344.57, plus interest at the rate of 8% per annum ("English Judgment").

Lloyd's thereafter sought to enforce the English Judgment by bringing suit against Harmsen and others in the United States District Court for the District of Utah ("District Court"). The District Court granted Lloyd's motion for summary judgment and entered judgment against Harmsen on March 17, 2003 for the principal amount of the English Judgment, together with interest, for a total of £235,084.48 as of December 8, 2002 ("District Court Judgment").[9] Harmsen appealed the judgment and the matter is currently under advisement before the Tenth Circuit Court of Appeals. At the trial before the bankruptcy court, no evidence was produced to demonstrate that Harmsen has made any payments on the balance of the District Court Judgment after the filing of a Partial Satisfaction of Judgment, which was filed with the United States District Court on March 24, 2003, indicating that a credit against the principal amount of the English Judgment was made on August 19, 1998.

### 2. WAFCO Debt

In 1992, Harmsen and a partner owned equal interests in a company that sought to develop a hydro-electric plant in Twin Falls, Idaho. Harmsen personally guaranteed a development loan from Jamaica Water and Power and pledged all assets that

---

7. R. at 12–16 and 49–51, *in* Appendix at 321–325 and 340–342. This panel recognizes that it is not evident from the bankruptcy court's Order of Dismissal that the findings of this sentence or the findings of this paragraph were the basis for any of the bankruptcy court's findings. However, the heart of the appeal by Lloyd's is that the bankruptcy court did not consider all of the evidence sufficiently and did not adequately address alleged actions of Harmsen that may be construed as "fraud, artifice or sham." Consequently, this panel has reviewed the entire record in rendering this decision.

8. R. at 51, lines 1–4 and 18–21, *in* Appendix at 342.

9. The District Court Judgment and a subsequent partial satisfaction of judgment entered in the federal district court on April 24, 2003, form the basis for Lloyd's $390,983.57 claim.

he owned at the time to secure the loan. Permits for the plan could not be obtained and the project failed.

In 1996, as a result of the project's failure, Harmsen and others entered into an agreement with WAFCO whereby (a) WAFCO paid and acquired the Jamaica Water and Power secured claim and (b) judgment was entered against Harmsen and others in favor of WAFCO in the amount of $2,215,907.11, plus interest ("WAFCO Judgment"). Accordingly, Harmsen pledged most, if not all, of his non-exempt assets to WAFCO at about the same time as Lloyd's commenced its action in 1996 in England. In conjunction with the agreement to enter into a judgment, WAFCO agreed to forbear enforcement of the judgment until September 1, 2000. The forbearance agreement was entered into by Harmsen's brother, Randall Harmsen, as president of WAFCO, by Harmsen, as president of Cogeneration Intermountain, Inc., Cogeneration, Inc., and SRC, as well as by Harmsen, individually, and on behalf of Kelly Harmsen, his wife.

The record reflects that the testimony of Randall Harmsen at trial was that, while he was the named president of WAFCO, he had little, if any, substantive involvement in the negotiations leading to the WAFCO Judgment.[10] Instead it was Harmsen who made the decisions in connection with the agreement.[11] Moreover, the law firm representing WAFCO in taking the judgment against Harmsen and eventually executing on his assets also had

represented Harmsen for many years and had handled personal matters for Harmsen, on occasion.[12] In addition, until May 1, 2003, Harmsen held a power of attorney from Randall Harmsen which allowed him to sign Randall's name to any WAFCO documents as president.[13]

Harmsen agreed to cooperate in the orderly liquidation of the pledged collateral and certain assets were transferred to WAFCO as partial payment on its claim. Harmsen leased back his residence, one of the transferred assets, from WAFCO on the condition that he pay rent in the amount of the underlying mortgage, insurance, property taxes, utilities, and all repairs and maintenance.

On September 1, 2000, the date upon which the balance was due under the forbearance agreement, Harmsen failed to pay WAFCO the remaining balance. WAFCO then executed upon its Judgment and a constable sale (foreclosure) was held on June 17, 2003. The collateral was transferred to WAFCO pursuant to the constable's sale and a partial satisfaction of judgment was filed January 20, 2004. According to the partial satisfaction of judgment, after credits from the sale, a balance of $865,227.50, plus applicable interest remained due. Since January 20, 2004, WAFCO has taken no action to collect the remaining balance due it. At the evidentiary hearing before the bankruptcy court, no evidence was produced to demonstrate that Harmsen had made any payments on

**10.** R. at 60–61, *in* Appendix at 347–348. Again, this panel recognizes that this finding or the findings of this paragraph were not expressly the basis for any of the bankruptcy court findings. However, as stated *infra* at n. 7, the primary focus of the appeal by Lloyd's is that the bankruptcy court did not consider all of the evidence sufficiently and did not adequately address alleged actions of Harmsen that may be construed as "fraud, artifice or sham." Thus, this panel has reviewed the

testimony with respect to the circumstances and negotiations leading to the WAFCO Judgment and has summarized the same herein.

**11.** R. at 61–63, *in* Appendix at 348–350.

**12.** R. at 89, *in* Appendix at 362.

**13.** R. 21–22, 48–52, *in* Appendix at 327–328, 339–343. *See also* Appendix at 217.

the remaining balance after January 20, 2004.[14]

The WAFCO execution on Harmsen's assets, in close time proximity to Lloyd's execution on its judgment and Harmsen's current use of those assets—including his home—is the centerpiece of Lloyd's dissatisfaction with the bankruptcy court's Order of Dismissal and the argument on this appeal.[15]

### 3. Other Debts

In addition to the debt to Lloyd's and WAFCO, there were other obligations owed by Harmsen or related entities. Included in these were three not insubstantial real estate obligations. First, there was an obligation to California National Bank on apartments located in California and owned by WAFCO. There were also obligations flowing from this rental including an account with San Diego Gas and Electric as well as Time Warner Cable. Second, there was an obligation owed to Washington Mutual Bank secured by real property owned by H.F.L.P., L.C. Third, there was an obligation to Western Farm Credit Properties Bank secured by real property in Nevada owed by H.H. Land and Cattle Company. At the evidentiary hearing before the bankruptcy court, no evidence was produced to demonstrate that Harmsen was not current on any of these obligations at the time of filing.

Nevertheless, it was not Harmsen who made payments on these obligations, it was his related companies.

Harmsen also had lines of credit with: American Express, Delta Sky Miles, Bank of America Flight Fund Visa, Capital One, MBNA America, Salt Lake City Credit Union Visa, and GM. At the evidentiary hearing, the evidence reflected that these accounts were current and in some instances, actually reflected a credit balance. However, at trial Harmsen indicated that he did not make the payments on these cards. Harmsen's companies paid the monthly billings and at the year end, Harmsen's compensation was adjusted, or offset, accordingly.

Harmsen had outstanding utility bills with Comcast, Newspaper Agency Corp., Questar, Salt Lake City Department of Public Utilities, and Utah Power and Light. At the evidentiary hearing, the evidence reflected that these accounts were current. Again, Harmsen does not pay these utilities, his related companies do.

Harmsen had doctor and professional bills to: N. Branson Call, M.D.; Thomas Liddle, D.D.S.; Gerald S. Sumerhays, DDS; HJ Associates, LC; Steven Lybbert; Steven Wuthrich; Melenaite Vi. With respect to the doctor and dentist bills, the evidence at trial reflected that

---

**14.** The bankruptcy court noted that the financial impact of the constable sale was that Harmsen's net worth went from $1,771,426.00 as of March 1, 2003, to less than $0. Nevertheless, the bankruptcy court noted that it could not focus on this balance sheet approach as it would be

> engaging in the very pitfall Congress wanted to avoid in implementing § 303(h)(1). Further, such an approach fails to take into account the totality of circumstances proscribed by the Tenth Circuit. "A debtor might be insolvent under the balance sheet test, but may be paying his debts as they

become due." This is exactly the case we have here.

(Order of Dismissal at 19, n. 33, in Appendix at 54) (citation omitted).

**15.** Lloyd's maintains that the bankruptcy court erred in concluding Lloyd's had adequate remedies under state law "where only six weeks prior to the [involuntary] Petition a competing creditor (controlled by the Debtor) seized and sold at execution sale virtually all of the Debtor's non-exempt personal property, after threatening Lloyd's that it would do so if Lloyd's did not compromise its claim against the Debtor." (Lloyd's Appellate Brief at 2).

these billings were either current or awaiting a determination/payment from Harmsen's insurance. While there was a balance due on HJ Associates, LC, the bankruptcy court did not consider this debt as being "due" based upon testimony that Harmsen and HJ Associates had a long term relationship and that they were working on an agreement to reach a discount regarding the billing. Steven Lybbert and Steven Wuthrich were Harmsen's attorneys and based upon the evidence at the evidentiary hearing, the billings to the attorneys were current. Melenaite Vi was a landscaper and the evidence at the evidentiary hearing reflected that payments to her were current.

Harmsen also had brokerage fees that were owed to two brokerage firms for margin loans. At the evidentiary hearing before the bankruptcy court, no evidence was produced as to the repayment of the principal of the margin loans and the evidence indicated that interest accrual was being paid or serviced as required.

Harmsen had a small obligation due at the time of filing to F. Weixler Company, but this amount, while past due, was $20.40 and the bankruptcy court determined that based upon the ledger history, this debt was being paid as it became due.

Harmsen had tax obligations outstanding at the time of filing, but the evidence before the bankruptcy court was that Harmsen had obtained extensions and payments were being timely made.

Finally, Harmsen had two ongoing obligations with clubs. The evidence at trial indicated that Harmsen had not made payments for his dues, but there was no evidence that these were ongoing obligations.

## C. The Order of Dismissal

In a lengthy and detailed opinion the bankruptcy court concluded that it did not need to reach a determination with respect to the required number of creditors under 11 U.S.C. § 303(b)(2) because Harmsen was generally paying his debts as they became due. The bankruptcy court concluded that Lloyd's failed to carry its burden to demonstrate that Harmsen was not, generally, paying his debts as they became due under the "totality of the circumstances test."

## II. Standard of Review

■■■ We review the legal conclusions of the bankruptcy court de novo.[16] De novo review requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision.[17] On the other hand, we review the bankruptcy court's findings upon which its legal conclusions are based under the more deferential clearly erroneous standard.[18]

## III. Issues on Appeal

As noted at the outset of this opinion, each of the parties has identified several issues on appeal. This Court synthesizes the central issues on appeal as follows:

A. Whether the bankruptcy court erred in its application of the burden of proof in determining that the debtor was generally paying his debts as those debts came due.

B. Whether the bankruptcy court improperly adopted the "Almost Per Se Rule" by focusing on only select

16. Salve Regina College v. Russell, 499 U.S. 225, 238, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991)

17. Id.

18. Clark v. Sec. Pac. Bus. Credit, Inc. (In re Wes Dor, Inc.), 996 F.2d 237, 241 (10th Cir. 1993).

factors or failed to properly consider the "totality of the circumstances" test as adopted by the Tenth Circuit in *Bartmann v. Maverick Tube Corp.*[19]

C. Whether the bankruptcy court erred in dismissing the involuntary petition on the ground that Harmsen was generally paying his debts as they became due on the date of the petition.

## IV. *Discussion*

### A. The Bankruptcy Court Did Not Err in its Application of the Burden of Proof in Determining That the Debtor Was Generally Paying His Debts as Those Debts Came Due

■ The application of the burden of proof is a question of law, reviewable *de novo*. The petitioning creditor has the burden of demonstrating that the debtor is not generally paying his debts as they become due.[20] Once the petitioning creditor has met its burden, the burden shifts to the debtor to show that the debts in question are subject to a bona fide dispute.[21]

Lloyd's asserts that the bankruptcy court's analysis of 11 U.S.C. § 303(h)(1) is flawed because the court considered several factors that have no bearing on the question of whether "the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute." According to Lloyd's, the bankruptcy court improperly allocated to Lloyd's the burden of proving that Harmsen was not "generally paying his debts as they became due" by requiring Lloyd's to prove, as part of its case, that:

(a) the Involuntary Petition was in the best interests of all of the Debtor's other creditors;

(b) Lloyd's had no other adequate remedy under state law;

(c) Lloyd's motives were something other than a self-centered desire to get paid;

(d) neither businesses employing the Debtor nor creditors of those businesses would be harmed by the Debtor's bankruptcy; and

(e) Lloyd's was not improperly forum shopping when choosing to proceed in Bankruptcy Court against the Debtor.[22]

Consequently, Lloyd's urges, because these factors were included in the court's rationale, the petitioning creditor was improperly required to prove these items.

■ We conclude that the bankruptcy court applied the correct standard in examining whether the "debtor is generally not paying ... debts" and that Lloyd's never met its burden. Specifically, the bankruptcy court held:

> [T]he burden rests upon the petitioning creditor to prove that the debtor was not paying his debts once due. In addition, courts have consistently held that the determination of whether a debtor was paying his debts once due must be made as of the date the involuntary petition was filed.
>
> "Congress has indicated that the primary issue in involuntary proceeding is and should be whether the debtor is

**19.** 853 F.2d 1540, 1546 (10th Cir.1988).

**20.** *In re Caucus Dist., Inc.,* 106 B.R. 890, 918 (Bankr.E.D.Va.1989).

**21.** 2 *Collier on Bankruptcy* ¶ 303.14[1][e](Lawrence P. King ed., 15th ed. Rev.2003).

**22.** Lloyd's Appellate Brief at 1–2.

generally not paying his debts as they become due ...." For this reason, the Court will comply with *Bartmann's* "totality of the circumstances" test and focus its inquiry on the nature and amount of Harmsen's debts and the general circumstances surrounding his payment or nonpayment of said debts, and then turn to the balancing test weighing the debtor's and creditors' divergent interests in proceeding in bankruptcy.[23]

As was recognized by the bankruptcy court, in determining whether a creditor has met its burden under 11 U.S.C. § 303(h)(1), the Tenth Circuit has concluded that the "bankruptcy court should examine the totality of the circumstances, balancing the interests of the debtor with those of the creditors."[24] The Tenth Circuit has neither articulated a specific burden, nor set out a series of factors to consider in ascertaining whether a debtor is "generally not paying ... debts." Instead, the Tenth Circuit utilizes a flexible case-by-case approach allowing the bankruptcy court, as the trial court, to receive and consider all admissible evidence presented, the demeanor and credibility of the witnesses, and argument of counsel, and make its determination as to whether the creditor has met its burden.

Congress, by using the term "generally" in 11 U.S.C. § 303(h)(1) and by not defining that term further, avoids a mechanical test and allows the bankruptcy court to have the ability to deal with a variety of situations as they are presented.[25] Thus, the bankruptcy court's consideration of (a) whether the involuntary petition was in the best interests of the debtor and all creditors, (b) whether Lloyd's had other available remedies under state law, (c) the harm or consequences Harmsen's bankruptcy filing might visit on his related businesses or those businesses' creditors or (d) whether Lloyd's was forum shopping when choosing to proceed in bankruptcy court against the Debtor, was not improper as those questions can be considered in the panoply of factors in rendering a decision under 11 U.S.C. § 303(h)(1).[26] While the bankruptcy court considered such aspects of the case within the context of the "totality of circumstances" test it did not establish or impose a burden of proof beyond that contemplated in *Bartmann*.

### B. The Bankruptcy Court Did Not Adopt the "Almost *Per Se* Rule" and the Bankruptcy Court Correctly Applied the "Totality of Circumstances" Test Mandated by the Tenth Circuit Court of Appeals

The dominant theme contained in the appellate briefs filed by Lloyd's is that the trial court did not correctly and fully consider the "totality of circumstances" surrounding Harmsen's financial situation and payment of debts. The central feature of this contention is that the bankruptcy

---

23. Order of Dismissal at 21–22, *in* Appendix at 56–57 (citations omitted).

24. *Bartmann*, 853 F.2d at 1546.

25. *In re All Media Properties, Inc.*, 5 B.R. 126, 143 (Bankr.S.D.Tex.1980) ("The term 'generally' was not defined in order to avoid the result [of a] mechanical test ... and give to the bankruptcy courts enough leeway to be able to deal with the variety of situations that will arise.").

26. *See Bartmann*, 853 F.2d at 1546. Furthermore, we observe that the bankruptcy court found that the "Petitioner believes this Court should grant relief because it makes the Petitioner's collection efforts easier." (Order of Dismissal at 29 *in* Appendix at 64). It does not appear that the bankruptcy court allocated a burden here. Instead, it appears to be an observation or characterization of the argument made by Lloyd's at trial. It is dicta.

court erred in invoking the "Almost *Per Se* Rule." [27]

The "Almost *Per Se* Rule" is a standard whereby the bankruptcy court treats the "generally not paying" analysis in involuntary cases brought by one creditor with a bias against granting relief.[28] In other words, under the "Almost *Per Se* Rule" the fact that only one creditor brings an involuntary petition is viewed as a factor—perhaps the predominant factor—against entering an order for relief.

 Lloyd's acknowledges that the bankruptcy court never articulated or referenced the "Almost *Per Se* Rule" as a basis for its decision. And, Lloyd's recognizes that the bankruptcy court "presaged" its analysis by using the Tenth Circuit's "totality of the circumstances" test balancing the interests of the putative debtor with those of the creditors test.

Then, in a summary statement, Lloyd's articulates the main thrust of its appeal stating that:

> Despite acknowledgment of the correct standard, rather than look at all of the circumstances, the bankruptcy court "focused" on some of the circumstances and ignored others, for example, the fact that Harmsen had lost to WAFCO at execution sale only six weeks prior to the Involuntary Petition virtually all of his nonexempt personal property and that the sale occurred only after WAFCO threatened Lloyd's that it would execute on all of the Debtor's assets if Lloyd's would not compromise its claim against the Debtor. These facts and others showing the Debtor's dire financial condition, and indicating also a "scheme, artifice or trick" to prefer an-

other creditor and isolate Lloyd's, were never mentioned by the Bankruptcy Court in its analysis as *Bartmann* requires.[29]

Put another way, Lloyd's argues that taking the cumulative impact of all the circumstances and evidence produced at the trial, the bankruptcy court did not consider the machinations, manipulations, and legal gymnastics of the Debtor, which constituted a "scheme, artifice or trick," and that the Court should have entered an Order for Relief.

Although not entirely clear, Lloyd's seemingly maintains that either the bankruptcy court (a) *did invoke* the "Almost *Per Se* Rule," and then failed to consider an exception to that rule—"fraud, trick, artifice, or scam"—which would justify entering an order for relief against Harmsen, or (b) the Court *did not invoke* the "Almost *Per Se* Rule," but it failed to consider and make findings relative to Harmsen's and WAFCO's alleged machinations and legal gymnastics, which should have been, but were not, incorporated into the *Bartmann* "totality of the circumstances" test.

This Court concludes that the trial court *did* consider and *did* address Creditor's contention that Harmsen's conduct, business, and transactions—whether construed as legitimate legal machinations or "fraud, trick, artifice or scam"—supported entry of an order for relief. Thus, whether the bankruptcy court actually invoked the "Almost *Per Se* Rule" or simply followed the *Bartmann* "totality of the circumstances" test, it fulfilled its duty to consider this issue advanced by Lloyd's. While the bankruptcy court addressed it somewhat

---

27. *In re Feinberg*, 238 B.R. 781, 784 (8th Cir. BAP 1999).

28. *See, e.g., In re Smith*, 123 B.R. 423 (Bankr. M.D.Fla.1990), *aff'd*, 129 B.R. 262 (M.D.Fla.

1991); *In re LeSher International, Ltd.*, 32 B.R. 1 (Bankr.S.D.N.Y.1982).

29. Lloyd's Appellate Brief at 25.

obliquely and by way of a footnote, it did it nonetheless. Specifically, in footnote 61, the bankruptcy court stated:

> [Lloyd's] raises a defense that Harmsen committed a fraud, artifice, or scheme which would allow the bankruptcy court to retain jurisdiction. In a single creditor case, some courts have granted relief upon such a showing. This is not a single creditor case. Even if it were, the evidence does not support a finding that Harmsen committed a fraud, artifice, or scheme in relation to the WAFCO Judgment and execution sale.[30]

Lloyd's notes that in the case of *In re Fischer*[31] the court commented that in those courts where the "Almost *Per Se* Rule" is adopted, there are two limited exceptions to its application.

> The first exception arises in "an exceptional case" where the sole creditor of the debtor "would otherwise be without an adequate remedy under State or Federal law (other than bankruptcy law) if denied an order for relief [ . . . ]" The second exception to this rule applies where there is "a showing of special circumstances amounting to fraud, trick, artifice or scam."[32]

Lloyd's contends that after the bankruptcy court set up an impermissible hurdle for Lloyd's to prove that the involuntary petition was in the "best interests of all creditors," it concluded that the exceptions to the "Almost *Per Se* Rule" did not apply because this was not a single creditor case. Lloyd's avers that the bankruptcy court, in making this observation, contradicted its own conclusion that this was, in essence, a two-party dispute. We do not believe that footnote 61 contradicts the conclusion that this is essentially a two-party dispute. The finding that this is not a single creditor case is not clearly erroneous. Indeed, there are *at least* two major unpaid creditors, Lloyd's and WAFCO.

Moreover, based on the record before the bankruptcy court and the arguments made on this appeal, it cannot be said that Lloyd's *has not* argued that if the "Almost *Per Se* Rule" exists, an order for relief should enter on the involuntary petition because Harmsen has ostensibly "committed a fraud, artifice, or scheme." In effect, *Lloyd's*, not the bankruptcy court, is the party that raised this issue at trial and the bankruptcy court evidently relegated the import of such defense to a footnote in the Order of Dismissal.

■■■ We conclude that the reference of the bankruptcy court that "the evidence does not support a finding that Harmsen committed a fraud, artifice, or scheme in relation to the WAFCO Judgment and execution sale" is not clearly erroneous. The elements of "fraud, artifice, or scheme . . ." require the trier of fact—the bankruptcy court—to assess the credibility of witnesses. This panel shall give due regard to the bankruptcy court in judging the credibility of the witnesses as related to the evidence.[33] Where, as here, the evidence is plausible in light of the record viewed in its entirety, an appellate court may not reverse the findings of the bankruptcy court "even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence different-

---

30. Order of Dismissal at 29, n. 61, *in* Appendix at 64.

31. *Crown Heights Jewish Comm. Council, Inc. v. Fischer (In re Fischer),* 202 B.R. 341 (E.D.N.Y.1996).

32. *Id.* at 346–47 (citations omitted).

33. Fed. R. Bankr.P. 8013.

ly."[34] Moreover, "[w]here there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous."[35]

■■■ This panel has reviewed the decision of the bankruptcy court in detail and concludes that contrary to the suggestion of Lloyd's, the bankruptcy court did *not* adopt the "Almost *Per Se* Rule." Did the bankruptcy court consider the fact that (1) this case was brought by one creditor, (2) no other creditors joined the involuntary complaint, and (3) there were other appropriate forums to resolve the dispute? Yes. But, these considerations were not isolated from other considerations and analysis in the bankruptcy court's decision. The bankruptcy court's discussion does not constitute an adoption by that court of the "Almost *Per Se* Rule" in light of the detailed analysis in the bankruptcy court's

decision of the various other factors in this case.[36]

## C. The Bankruptcy Court Did Not Err in Dismissing the Involuntary Petition on the Ground That Harmsen Was Generally Paying His Debts as They Became Due on the Date of the Petition

■■■ A bankruptcy court's factual finding that a debtor is, or is not, generally paying his debts as they come due will not be set aside unless clearly erroneous.[37] As stated above, the Tenth Circuit has not set out a specific standard or narrow test in analyzing the question of whether "the debtor is generally not paying such debtor's debts as such debts become due," but it looks to the "totality of the circumstances, balancing the interests of the debtor with those of the creditors."[38] We believe that the bankruptcy court's deci-

---

**34.** *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

**35.** *Id.*

**36.** If, as Lloyd's puts forth, the bankruptcy court must enter an order for relief based upon the seemingly manipulated architecture of Harmsen's personal and business interests that insulated him from suits in the context of a voluntary petition under Chapter 11, it could conclude that the very reasons cited by Lloyd's allegedly warranting the entry of an Order for Relief in this involuntary case would otherwise warrant dismissal of a Chapter 11 voluntary petition. In analyzing the "good faith" of a voluntary Chapter 11 case, courts have concluded that consideration of the "totality of circumstances" is required. *In re Winslow,* 123 B.R. 641, 646 (D.Colo. 1991), *aff'd,* 949 F.2d 401 (10th Cir.1991). Situations wherein "good faith" has been found lacking warranting dismissal include those cases involving:

> (1) use of bankruptcy as a vehicle to defraud others, (2) persistent failure to comply with applicable court orders, rules or procedures, (3) use of the bankruptcy pro-

cess to escape familial obligations, (4) the secretion of property and other efforts to avoid the disclosure of assets, (5) use of the bankruptcy system simply to avoid the consequence of prior misconduct, (6) the filing of a case to avoid an obligation under circumstances in which the debtor is not in need of reorganization, (7) the absence of legitimate debt, (8) the absence of any likelihood of rehabilitation, (9) use of bankruptcy as a vehicle to resolve disputes solely between equity participants, (10) use of the bankruptcy process merely to frustrate the rights of creditors (particularly with respect to single asset cases) or to coerce unfair treatment, (11) successive filings without any change in financial condition, and (12) the so-called new debtor syndrome, in which a debtor is created, or property is transferred, solely for the purpose of commencing a bankruptcy case.

7 *Collier on Bankruptcy* ¶ 1112.07[2] (Lawrence P. King ed., 15th ed. Rev.2003) (citations omitted).

**37.** *In re H.I.J.R. Properties Denver,* 115 B.R. 275 (D.Colo.1990).

**38.** *Bartmann,* 853 F.2d at 1546.

sion, here, under the case-by-case approach utilized by the Tenth Circuit is correct and appropriate. It carefully balanced the grounds for entering an order for relief on the involuntary petition with the intrinsic risk involved because an involuntary bankruptcy case is "extreme in nature and carries with it serious consequences for the alleged debtor, such as a loss of credit standing, interference with its general business affairs, and public embarrassment." [39]

The bankruptcy court stated that in focusing its inquiry on the nature and amount of Harmsen's debts and the general circumstances surrounding his payment or nonpayment of said debts, it found it useful to look to tests adopted in other jurisdictions for determining whether a debtor is generally paying his debts. First, the bankruptcy court looked to the four-pronged analysis utilized by the court in *In re Norris*.[40] In *Norris*, the court

looked to: (1) the number of unpaid claims; (2) the amount of such claims; (3) the materiality of the nonpayments; and (4) the debtor's overall conduct in its financial affairs.[41] Second, the bankruptcy court looked to cases using a two-pronged test: (1) whether a debt should be included as a debt in "generally not paying" calculation; and (2) comparing the number and amount of unpaid debts with the number and amount of paid debts.[42] Third, the bankruptcy court also noted the numerous factors listed by *Collier on Bankruptcy*.[43]

The facts surrounding Harmsen's financial affairs and his related businesses are unique. In particular, the transactions involving Harmsen and WAFCO draw scrutiny. However, it is clear from the record and the bankruptcy court opinion that the bankruptcy court had the opportunity to ascertain the credibility of the witnesses, assess the evidence presented, and exam-

---

**39.** *In re Petro Fill, Inc.,* 144 B.R. 26, 29 (Bankr.W.D.Pa.1992).

**40.** 183 B.R. 437 (Bankr.W.D.La.1995).

**41.** *Id.* at 456.

**42.** *In re West Side Comty. Hosp.,* 112 B.R. 243, 256 (Bankr.N.D.Ill.1990).

**43.** The factors presently listed in *Collier on Bankruptcy* include:
— the debtor's ability to satisfy only small periodic payments, not long-term obligations;
— the debtor's making regular payments only on small, recurring obligations, not on larger debts;
— the rapid decline in the value of the debtor's assets resulting from asset sales rather than profit generating activity;
— the amount of the debtor's debts compared to the debtor's yearly income;
— the debtor's voluntary shutdown of operations;
— the insider's deferred payment on account of loans payable to them;
— serious allegations regarding the conduct of the debtor's business;

— the apparent bad faith evidenced by corporate officers taking loans despite the company's financial distress;
— payments made by insiders both before and after filing;
— payments made by third parties or a waiver of claims by a third party;
— the debtor's statement of a subjective desire to pay the debts;
— the debtor's liquidation of its assets;
— the fact that debtor's defaults are only on extraordinary debts;
— the fact that payments have been made by some partners individually even though the debts were those of the partnership;
— the fact that the due and unpaid debts are made up entirely of claims of the petitioning creditors while other nonpetitioning creditors are all paid.

2 *Collier on Bankruptcy* ¶ 303.14[1][b] (Lawrence P. King ed., 15th ed. Rev.2003) (citations omitted).

The author of the treatise goes on to say: "No one factor is more meritorious than another; what is most relevant depends on the facts of each case." *Id.*

ine the arguments of counsel. Moreover, the factual findings of the bankruptcy court are supported by the record. The failure, if it can be viewed as such, of the bankruptcy court to identify each and every possible factor in making its decision is of no avail.

Taken as a whole, the record supports the conclusion that Harmsen was generally paying his debts on a regular basis at the time of the filing of the involuntary petition with the exception of the District Court Judgment and the WAFCO Judgment. Thus, we cannot conclude that the bankruptcy court's factual finding that under the totality of the circumstances, Harmsen is generally paying his debts as they come due is clearly erroneous.

## V. *Conclusion*

The decision of the bankruptcy court is AFFIRMED.